## Case No. 4,816.

### FISHER v. CONSEQUA.

[2 Wash. C. C. 382.] [1]

Circuit Court, D. Pennsylvania.   Oct. Term, 1809.

Mr. Ingersoll, Mr. Dallas, and Charles Ingersoll, for defendant,

Rawle, Lewis and Morgan, contra,

WASHINGTON, Circuit Justice.   In deciding the question, whether a foreign attachment will lie in sucn a case as the present, we shall come at once to the act of assembly, passed in 1705, which first authorized this mode of proceeding, and inquire what is its true meaning, in relation to the point now under consideration?  We do not by this, mean to say, that in no instance ought the

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

custom of London, in respect to foreign attachments, to be regarded; it may, and in practice ·has probably been frequently referred to with advantage. But we should not feel ourselves authorized to extend or to limit this remedy, by rules established under the custom, where such rules are broader or narrower than the law of this state. It must be admitted, that, according to a strict and literal construction of the act of assembly, the foreign attachment is confined to cases of debt; and not only so, but to debts contracted or owing within this state, by persons absenting themselves therefrom. The 3d section, which was much relied upon by the plaintiff's counsel, as extending the remedy to other demands than debt, is in this respect clearly confined to residents about to abscond, or to leave the state, and who refuse to give security to the complainant for his debt or other demand. The nature of the case pre-supposes an inability in a non-resident to give such security. Nevertheless, we find that this law has received in practice a liberal construction, so as to embrace debts contracted in foreign countries, by persons who never did reside here, and who, of course, could not properly be said to absent themselves; and which debts, neither by the terms of the contract, nor by the removal of the debtor hither, could be said to be owing here.

This is a remedial law and ought, upon the soundest principles of construction, to be so extended as to remove the mischief, and to advance the remedy. The mischief, as the preamble informs us, was, that the effects of absent persons were not equally liable with those of persons dwelling on the spot, to make restitution for debts contracted, to the injury of the inhabitants of Pennsylvania. The remedy provided for this evil, was a process by which the property of absentees or absconding persons, found within the province, was rendered liable to make satisfaction. But the same preamble speaks of debts contracted or owing, and it is contended, that the remedy can be extended only to cases of debt. What is a debt? In strict law language, it is a precise sum due by express agreement, and does not depend upon any after calculation to ascertain it. The remedy for recovery of it is by action of debt, and frequently by action of indebitatus assumpsit. But is this the only case within the mischief intended to be remedied by this law? Surely, an inhabitant of Pennsylvania is not less injured by the want of a remedy to recover what is due to him by a foreigner, upon a sale of property, where no price was stipulated, than he would be if a fixed price had been agreed on. In the latter case, the defendant is indebted to the plaintiff in a precise sum; and in the former, a sum equal to the value of the property sold, not then, it is true, liquidated, but depending upon the value to be fixed at the trial. The uncertainty of the sum due, does not, in the common understanding of mankind, render it less a debt. A promise, whether express or implied, to pay as much as certain goods or labour are worth, or as much as the same kind of goods may sell for on a certain day, or at a certain market; or to pay the difference between the value of one kind of goods and another, creates, in common parlance, a debt; and the person entitled to performance does not speak of his claim, as for damages, but for a debt, to the amount which he considers himself entitled to. But it is not every claim, that, upon a fair construction of this law, or even in common parlance, can be denominated a debt. For, in the first place, the demand must arise out of a contract, without which no debt can be created; and the measure of the damages must be such as the plaintiff can aver by affidavit to be due; without which, special bail (which the defendant, by giving, may dissolve the attachment) cannot regularly be demanded. It follows, from this, that a foreign attachment will not lie for demands which arise ex delicto, or where special bail could not be regularly required. Although we meet with no adjudged case, in this state, precisely upon the point of this cause, yet enough may be gathered from what has fallen from the judges, to show how this attachment law has been considered in practice. In M'Clenachan v. M'Carthy [supra] the judge says, that "after judgment against the defendant in the attachment, the plaintiff files his declaration according to the nature of the demand. If in debt, no oath is required; if in case, then a writ of inquiry issues, to ascertain the demand." Now, if indebitatus assumpsit were the only declaration upon which the writ of inquiry could issue, it is hardly to be believed that the judge would have used so comprehensive an expression, as that of a declaration in case. It is most obvious, that his mind took a more enlarged view of the remedy, and considered it as embracing other cases than those of debt, strictly so called. So, too, when the court say, in other cases which have been decided, that it is the practice to inquire into the cause of action in a foreign attachment, as in that of bail on a capias, and to dissolve in the one instance where they would not hold to bail; we consider the practice in relation to bail, as so far connected with that of the foreign attachment, that if regularly bail would be required, in matters of contract, the attachment would not be dissolved.

This is a case of contract, by which the defendant binds himself to deliver to the plaintiff teas of a certain quality, and suited to a particular market; and on failure to do so, to pay the difference between teas of such quality, and such as should be delivered. Teas, agreeably to contract, were not delivered; and the plaintiff swears, that the difference amounts to 4500 dollars. Whatever be the difference, the defendant has

promised to pay it, and of course is to that amount indebted to the plaintiff; and if he were present, and served with a capias, he would be held to bail, as of course. There is, therefore, upon the principles before stated, no ground to dissolve the attachment.

As to the other ground taken by the defendant, that an attachment against his property, by the same plaintiff, and for the same cause of action, was sued out in the common pleas of this state, and afterwards discontinued, there is no evidence of an intention to harass the defendant, so as to induce this court to dissolve this attachment; which (unlike the case of holding to bail, where the second action still proceeds,) would be tantamount to a denial of any remedy at all, to recover what he thinks himself entitled to. I am not prepared to say, that the rule observed in relation to discharging on common bail, on the ground of vexation, is at all applicable to the case of dissolving an attachment. On this point, however, I give no opinion. Rule discharged.