Heckscher v. Trotter.

## AUGUST HECKSCHER v. CHARLES W. TROTTER.

1. The defendant had possession of a mine, under a lease in which he covenanted to pay $2 a ton royalty for all ore mined and removed, and to mine and remove ten thousand tons per annum. *Held*, that attachment would not lie for the damages accruing on breach of the covenant to mine and remove the stipulated quantity.
2. The plaintiff's preliminary affidavit in attachment is not conclusive as to the nature of his claim.
3. The defendant in attachment may give bond and have his personal property discharged, after appearing and pleading in the action.

In attachment. On rule to show cause. The facts appear fully in the opinion.

Argued at June Term, 1886, before Justices REED and DIXON.

For the plaintiff, *Henry C. Pitney*.

For the defendant, *Cortlandt Parker*.

The opinion of the court was delivered by

DIXON, J. On December 16th, 1884, the plaintiff made affidavit that the defendant was nonresident, and was justly indebted to him in the sum of $35,000 for rents and royalties accrued upon a certain indenture of lease, and on filing

the affidavit with the clerk of this court, writs of attachment were issued to the sheriffs of Sussex and Mercer. Under these writs personal property valued at $25,894 was attached. Subsequently the defendant appeared and pleaded in the suit, and thereafter, on May 4th, 1886, obtained a rule that the plaintiff show cause why the defendant should not be permitted to give a bond in double the sum of $12,000, and thereupon have his property released and discharged from the lien of the writs, on the ground that the residue of the sum claimed in the plaintiff's affidavit consisted of damages in covenant, for which no attachment can legally issue.

On the return of this rule it appears that the lease referred to is dated April 10th, 1879, and demises to the defendant a vein of franklinite ore for fifteen years, reserving to the lessor, from whom the plaintiff has derived title, a rent or royalty of $2 a ton for all the ore mined and removed from the premises, and containing a stipulation on the part of the defendant that he will mine and remove at least ten thousand tons of ore per annum. It also appears that the plaintiff's claim covers the period from April 10th, 1883, to October 10th, 1884, and is for six thousand four hundred and thirty-nine tons of ore mined and removed, and for the defendant's failure to mine and remove the stipulated quantity.

The principal question raised upon the rule is whether attachment will lie for a demand accruing by reason of a breach of this covenant to mine and remove ten thousand tons per year.

The general rule established in this state is that " an attachment will not lie for unliquidated damages, and can be used only when the demand is for a sum certain." *Schenck* v. *Griffen*, 9 *Vroom* 462, 467. " An attachment will lie where the cause of action is founded upon contract, and is of such a nature that the plaintiff " would formerly have been " entitled to hold the defendant to bail upon filing an affidavit of the cause of action. When the cause of action arises *ex delicto*, or is of such a nature that bail " could not have been " required without the order of a court or judge, resort cannot

be had to this remedy." *Jeffery* v. *Wooley,* 5 *Halst.* 123 ; *Boyd* v. *King,* 7 *Vroom* 134.

With regard to bail, Mr. Petersdorf says : " The general rule adopted by all the courts is consistent and uniform, that where the cause of·action arises from a debt or money demand, or where it sounds in damages, but the damages are capable of being ascertained with certainty, by mere arithmetical computation, the defendant may be holden to bail as of course; but, on the other hand, where the cause of action consists merely in a right to recover some damages, but those damages are general, indefinite and undetermined, or incapable of being reduced by calculation to a proper degree of certainty, without the intervention of a jury, the defendant cannot be holden to bail as of course." Petersdorf on Bail 16 (10 *Law Lib.*) "In particular, in an action of covenant, the defendant cannot be held to bail as of course, unless the covenant be for the payment of a sum certain." *Jeffery* v. Wooley, ubi supra.

Thus far the decisions in New Jersey carry us. When we look to the decisions in other states, we find most of them to be inapplicable, because they rest upon rules inconsistent with those already established here. But the cases of *Fisher* v. *Consequa,* 2 *Wash. C. C.* 382; *Clark's Ex'rs* v. *Wilson,* 3 *Id.* 560; *Wilson* v. *Wilson,* 8 *Gill* 193, and *Warwick* v. *Chase,* 23 *Md.* 154, seem to proceed on the lines which our own courts have laid down, and hence are useful as illustrations of the rule. In Fisher *v.* Consequa, the defendant had bound himself to put on board ship at Canton a cargo of teas of the very first quality, for the Amsterdam market, and, if they did not prove of such quality at the sales in Amsterdam, to make good all deficiencies. At the sales in Amsterdam the teas proved to be of inferior quality, and worth $4500 less than teas of the first quality. The court held that attachment would lie for the deficiency. In Wilson *v.* Wilson, the defendant sold flour to the plaintiff, and guaranteed that it should pass with the inspector as superfine, and that if it did not they would make such allowance as was customary at the

place of inspection for the difference between flour of the grade certified by the inspector and superfine flour. The flour was certified by the inspector to be of an inferior grade, and the difference in value, according to the custom, was fifty cents. a barrel. The court held that the difference could be sued for by attachment.

In both of these cases the standard for measuring the damages was fixed by the contract, the damages being the difference in value of two articles, the value of which was already determined either by the sale of the articles themselves or by the market price of other articles of like value. Damages so ascertained, or by calculation ascertainable, could properly be sworn to by the plaintiff.

In Clark's Ex'rs v. Wilson, the plaintiff attached for damages arising out of a breach of the defendant's covenant in a charter-party to employ a vessel for a designated voyage at £670 per month. The plaintiff swore that the voyage would have consumed twenty-four months, and rated his damages accordingly. The court held that the length of the voyage was conjectural, and hence the damages were so uncertain that they could not with propriety be averred in an affidavit, but must be ascertained by a jury, and that the attachment was illegally used.

In Warwick v. Chase, the claim was for damages occasioned by delay in selling a cargo of flour at Rio, and by failure to invest the proceeds in a cargo of coffee for return to Richmond. The court held that as the damages depended mainly on the price of coffee in Richmond at the time when the return cargo would have arrived, and that time was not fixed, the damages were too uncertain for attachment. It was declared, "the general rule is that unliquidated damages resulting from the violation of a contract cannot be recovered by attachment, unless the contract affords a certain measure or standard for ascertaining the amount of the damages. * * * The standard should be a subject matter of the contract. * * * The standard must be shown by the contract, without the aid of inferences from extrinsic facts or circumstances."

In the case now before us the plaintiff insists that the damages recoverable for breach of the covenant to mine tèn thousand tons a year are such as will sustain attachment within the principles of these decisions. He contends for one of the three following positions: first, that the convenant is substantially to pay $2 a ton for at least ten thousand tons per annum; secondly, that the defendant being put in exclusive possession of the mine, it is as if at least ten thousand tons of ore per annum had been sold and delivered to him at $2 a ton; thirdly, that when less than ten thousand tons a year are mined, he is at any rate entitled to the stipulated price of ten thousand tons, less the value in the mine of the difference between ten thousand tons and the quantity of ore mined in each year; and that the value of ore in the mine is ascertainable with as much definiteness as that of merchandise generally, and hence, as attachment will lie for the value of general merchandise sold without a price stated, all the elements for calculating his damages are capable of being determined with sufficient certainty to warrant an attachment.

His first position is manifestly not accordant with the contract; for that, by expressly binding the defendant to pay $2 a ton for ore mined, and being silent as to what he shall pay for ore not mined, precludes us, by the plainest implication, from putting the two classes of ore on the same footing as to price. His second position is as evidently untenable; for it ignores the fact that the defendant, although in possession of the mine, has acquired, and can acquire no ownership in the ore, except it be actually severed. The liability of a purchaser for the price of goods sold rests upon his having become their owner. Hence the attempted analogy fails at the very basis. His third position is more plausible, but is also, I think, unsound. One of its postulates is that the value of the ore unmined is fixed with such reasonable certainty as to justify the plaintiff in swearing to it. But this is not to be conceded. For, even the thing to be valued is itself not ascertained, since the defendant was at liberty to mine the ten thousand tons from any part of the leased vein; and, had the very

ore been ascertained, its richness would be a matter for conjecture only, so long as it lay imbedded in the rock. An article thus conditioned is not to be compared with merchandise of determinable quality and commonly sold in the market, when the ·question is, How shall its value be settled ?

It seems to me that neither the contract nor the law prescribes any standard for measuring the damages accruing to the plaintiff on breach of this covenant, sufficiently definite for their proper ascertainment, without the intervention of a jury, and hence that the writ of attachment cannot legally be issued for their recovery.

The plaintiff further contends that his preliminary affidavit is conclusive, or at least that the defendant, by appearing and pleading without objection, is estopped from questioning the propriety of the writ.

The affidavit is not conclusive as to the nature of the plaintiff's claim. *Day* v. *Bennett*, 3 *Harr.* 287 ; *Shadduck, Ex'r*, v. *Marsh*, 1 *Zab.* 434; *S. C.*, 1 *Zab.* 463.

Nor should the defendant's appearing and pleading in the action impair his right to investigate the propriety of the plaintiff's claim to a special statutory lien upon his property. By appearing generally, the defendant acknowledges that due steps have been taken to bring him personally into court to answer whatever demands the plaintiff may lawfully present in such an action as he has instituted, and by pleading, the defendant confines the inquiry touching his personal liability to the issues which his pleadings raise, but neither of these concessions seems to involve an obligation to leave his property charged with a lien for which there was no lawful warrant. The position of the plaintiff is not altered to his detriment in the least, by the defendant's giving bond now after pleading, instead of at the time of entering his appearance. Moreover, sections 38 and 39 of the Attachment act contemplate this mode of procedure. *Rev., p.* 48.

Let the property attached be discharged, on the defendant's giving such bond as would have been required by the statute, in case the plaintiff had sworn to a debt of $12,878, being

the royalty of $2 a ton for six thousand four hundred and thirty-nine tons of ore mined and removed.

Two other writs of attachment were subsequently issued, at the suit of the same plaintiff against the same defendant, for claims of similar character arising on the same lease. On like rules obtained by the defendant, it appears that, besides claims for unliquidated damages for failure to mine, the plaintiff claims, under each writ, $2 per ton royalty for seventeen hundred tons of ore mined and stored by the defendant " on the earth, about one hundred feet from the mouth of the shaft, being on the Mine Hill tract mentioned in the deed from Fowler to Curtis." On these claims, the question raised is whether ore thus mined and stored is " ore mined and removed from the demised premises," within the meaning of the lease.

Among the facts agreed upon under the rules, the lease is set out in full, and the deed from Fowler to Curtis appears in part. From what is thus shown we are not able to conclude that the place of storage is upon the demised premises. Hence the royalty seems to be earned.

According to the decision in the first case, the bonds required will be, in the second case, as if the plaintiff had sworn to a debt of $4160, being $2 a ton for two thousand and eighty tons, and in the third case, as if he had sworn to a debt of $3400, being $2 a ton for seventeen hundred tons.