E. R. STIFF ET AL. v. J. J. FISHER.

No. 90.

1. **Attachment—Debt and Unliquidated Damages.**—The difference between the contract price of property and its market value at the time and place it should have been delivered constitutes, not a claim for unliquidated damages, but a debt such as will support an attachment, since the demand arises out of a contract, and the measure of damages is such as plaintiff can aver by affidavit to be due; and it is not material whether the promise to pay such damages be express or implied.

2. **Substituted Contract — Right of Action upon the Original Contract Remains, When.**— Where a substituted contract made slight changes as to details in executing the original contract, in relation to matters not of the essence of the original contract, the court did not err in charging that such substituted contract, set up by defendant, would not prevent the plaintiff from maintaining his action upon the original contract, unless it appeared that the new·contract had in fact been performed by the defendant, or that he was ready, willing, and able to perform the same according to its terms.

3. **Evidence of Another Contract Admissible, When.**—Where, in an action for failure to deliver certain cattle, the defendant attempted to prove that he had more cattle ready to deliver than was required to fill the contract, it was competent for the plaintiff to prove in rebuttal that defendant had also obligated himself to deliver cattle at the same time and place in fulfillment of another contract with another person.

4. **Market Value—Place of Delivery.**—Where a contract called for the delivery of cattle at or near V., a town in C. county, it was competent to prove the market value of such cattle in C. county generally, it being shown that there was no market at V. different from the market in the county generally.

5. **Attachment—Fraudulent Disposition of Property.**—In an action where an attachment had issued on the ground that the defendant had disposed of his property with intent to defraud his creditors, and there was proof that the defendant had mortgaged the property, the court correctly refused an instruction containing the proposition, that if the debt secured by the mortgage was real and not fictitious, the giving of the mortgage was not a fraudulent disposition of the property, since such a charge would have withdrawn from the jury the consideration whether or not the mortgage was, in fact, executed with a fraudulent intent.

6. **Agency—Declarations of Agent Admissible, When.**—It is not required that the proof of agency be full and satisfactory before evidence of the agent's acts and declarations are admissible. If competent evidence has first been introduced tending to prove the agency, the acts and declarations of the agent, if otherwise competent. may be admitted, as it is the province of the jury to pass upon the sufficiency of the proof upon this as well as other issues of fact.

7. **Attachment—Affidavit for, True only in Part.**—An affidavit for attachment which alleges that the debt sued for is due for property obtained under false pretenses, where in fact only a small part of the debt is due for property obtained in that way, is both literally and substantially false, and a seizure of the debtor's property to secure the larger sum is wrongful.

APPEAL from Cooke.   Tried below before Hon. D. E. BARRETT.

*T. F. Mangum* and *Stuart & Lewis*, for appellants.—1. The court erred in overruling defendants' motion to quash the attachment, because the same is based upon a claim for unliquidated damages not fixed by the contract, but dependent upon contingent facts, and necessarily requiring the estimate and intervention of a jury. Sayles' Civ. Stats., secs. 152, 153, 155, 156, 183, 184; Drake on Attach., secs. 25, 26; Jefery v. Woolley, 5 Halst., 123; Hochstadler v. Sam, 73 Texas, 315.

2. If, in lieu of the obligations of a pending contract, a binding promise for a new consideration, performable at a future day certain, is given, which new promise is, by intent and effect of the new agreement, itself a satisfaction and extinction of the old, then the remedy upon the original cause is wholly gone, and can not be revived by failure to perform the new agreement. This question is one of intent from all the facts. A contract is discharged by alteration of its terms, when what is to be done is so far altered as to be inconsistent with it and to amount to a new contract. Railway v. Harriett, 80 Texas, 73; 2 Pars. on Con., 682, 684, note f; Babcock v. Hawkins, 23 Vt., 261; 6 Wait's Act. and Def., 413; Anson on Con., 251, 307; Bish. on Con., secs. 68, 174, 136, 137; 1 Add. on Con., sec. 372; Church v. Florence, 45 N. J. L., 129; Flanders v. Fay, 40 Vt., 316; Lister v. Clark, 48 Iowa, 168; Roberts v. Williams, 34 Mich., 129; Farrar v. Toliver, 88 Ill., 408; Bishop v. Busse, 69 Ill., 403; Cooke v. Murphy, 70 Ill., 96.

3. It was not competent nor legal to establish defendants' incapacity to comply with the Fisher contract sued on, by establishing the existence of a like contract with Stevens.

4. In the absence of a market at the place of delivery, Valley View, the market value of the cattle there could only be shown by proof of the market price at the nearest point where property of a like character, in like quantity, could be bought and sold, with addition of the cost of transportation. White v. Cattle Co., 75 Texas, 465; Waples v. Overaker, 77 Texas, 7; 2 Suth. on Dam., 373; Field on Dam., 248; Harris v. Railway, 58 N. Y., 661.

5. The mortgage to the First National Bank of McKinney was subordinate to Fisher's equitable right of specific performance of the contract by delivery of the cattle, and could not be used to defeat this right. Coleman v. Dunman, 67 Texas, 390; 3 Pome. Eq., sec. 1296; 2 Pome. Eq., secs. 801–821.

6. The declarations or admissions of one who assumes to be agent for another are not admissible to prove such agency. Latham v. Pledger, 11 Texas, 439; Insurance Co. v. McGregor, 63 Texas, 399; Coleman v. Colgate, 69 Texas, 89; Mech. on Ag., secs. 100, 101.

7. Proof that $1200 was obtained under false pretenses would not justify the charge made in the affidavit for attachment, that the money sued for in this cause, $10,200, was obtained under false pretenses.

*Davis & Harris*, for appellee.—1. The measure of damages depended upon the market value of the cattle, and there was no such uncertainty in regard to it as would prevent the suing out of an attachment. Hock-stadler v. Sam, 73 Texas, 315; Drake on Attach., sec. 12, et seq.; 1 Wade on Attach., sec. 10, et seq.; Wilson v. Wilson, 50 Am. Dec., 685.

2. The charge of the court as to the substituted contract was all that was required by the evidence on that subject. Overton v. Conner, 50 Texas, 113; Railway v. Gordon, 70 Texas, 87; Schwartz v. Evans Co., 75 Texas, 198; 6 Wait's Act. and Def., 413.

3. The contract with J. R. Stevens, being set forth by appellants in their answer, was admissible in evidence; and besides, it was admissible upon the question of the ability of appellants to comply with their contract.

4. The evidence of the market value of the cattle was admissible under the circumstances of the case. Sedg. on Dam. (6 ed.), 334; 2 Suth. on Dam., 375; Cohen v. Platt, 69 N. Y., 352.

5. The charge of the court as to the law of attachments and the measure of damages was all that was demanded by the evidence, and the charges requested were incorrect and inapplicable to the facts. Bank v. Bamberger, 77 Texas, 48; 1 Wade on Attach., sec. 98; Waples on Attach., sec. 60.

STEPHENS, ASSOCIATE JUSTICE.—This suit was brought by J. J. Fisher against E. R. Stiff, as principal, and Gabe Beck, as guarantor, to recover the sum of $10,200, on account of the alleged failure of Stiff to deliver to Fisher 2000 head of yearling steers, as provided in a contract entered into between them on the 21st day of December, 1889. By the terms of this contract these cattle were to be delivered about the 20th day of April, 1890, at or near Valley View, in Cooke County, Texas, after being classed and passed upon at Stiff's ranch in Collin and Denton counties; but to be counted at Valley View. The steers were to be a good, smooth lot of merchantable cattle, free from defects, and of full age at the time of delivery; and were to be bought in Collin, Grayson, Ellis, and Dallas counties. The price agreed upon was $7 per head, to be paid as follows: $4000 cash (which was paid), $3000 about the 10th of January, 1890 (which was also paid), and the balance at the time of delivery.

This contract was made by J. J. Fisher, through his agent, P. S. Witherspoon, who was to drive the cattle from the Stiff ranch, but Fisher was not to be responsible for losses until after they were counted at Valley View. A further advance payment of $1200 was afterwards made, under circumstances which, if appellee's witnesses be deemed credible, would warrant the inference that the money was obtained by falsely representing or fraudulently concealing material facts on the part of Stiff.

No cattle having been delivered on or before April 20, 1890, appellee

sued to recover the money paid on the contract and the difference between the contract price and the market value, in the total sum above named. Attachment writs were sued out at the same time, to-wit, on the 22d day of April, 1890, upon the grounds, (1) that Stiff had disposed of his property with intent to defraud his creditors, and (2) that the debt sued for was due for money obtained under false pretenses. The cattle of Stiff in Grayson, Collin, and Denton counties were levied on under these attachments and replevied by him. The jury returned a verdict in favor of appellee for $9200, and from the judgment approving this verdict this appeal was taken.

1. Appellant Stiff moved to quash the attachment, because the same was based upon a claim for unliquidated damages. The overruling of this motion being assigned as error, presents the first question for determination.

Near the beginning of the present century Mr. Justice Washington, of the Supreme Court of the United States, in the case of Fisher v. Consequa (2 Wash., 384), in construing the attachment statute of Pennsylvania, in which the words "debt" and "demand" occur, while recognizing that in strict law language "debt" is a precise sum due by express agreement, announced the proposition, "that the uncertainty of the sum due does not, in the common understanding of mankind, render it less a debt." That was a case of contract, by which the defendant bound himself to deliver the plaintiff teas of a certain quality and suited to a certain market; and on failure to do so, to pay the difference between teas of such quality and such as should be delivered. In sustaining an attachment sued out to recover the difference, he uses this language: "A promise, whether express or implied, to pay as much as certain goods or labor are worth, or as much as the same kind of goods may sell for on a certain day or at a certain market, or to pay the difference between the value of one kind of goods and another, creates, in common parlance, a debt." In determining whether the attachment should issue, he applied this test: The demand must arise out of a contract, without which no debt can be created, and the measure of the damages must be such as the plaintiff can aver by affidavit to be due.

These principles have been applied in many subsequent cases, though the decisions are not uniform. Drake on Attach., secs. 12–23. It is true, in that case there was an express promise to pay this difference; while in the case here submitted there was but an implied promise to pay the difference between the contract price and market value at the time and place of delivery. In some of the cases, however, cited by Mr. Drake above, there was no express promise.

We are of opinion that the words "debt" and "demand," as used in our attachment statute, should not be so restricted in their meaning and

scope as appellants contend, and that no error was committed in over-ruling the motion to quash the attachment. While a strict compliance on the part of the attaching creditor with the statute has been steadily enforced in this State, it seems to us that in construing the meaning of the law itself, to adopt an illiberal rule is to disregard the expressed will of the Legislature. Rev. Stats., Final Title, sec. 3; see, also, Hochstadler Bros. v. Sam, 73 Texas, 315; Wilson v. Wilson, 50 Am. Dec., 685; And. Law Dic., 315; 1 Am. and Eng. Encyc. of Law., 986.

2. Another defense interposed by appellants is, that about the 1st of April, 1890, a new contract was entered into between the parties, mate-rially changing, and abrogating to the extent of the changes, the old one. We find from the evidence, that about the date named Stiff and P. S. Weatherspoon, as agent for Fisher, and also for J. R. Stevens, who had a similar contract for the delivery of 1500 cattle, in view of the fact that Stiff had a part of the cattle ready for delivery, and that Fisher and Stevens were desirous of receiving them earlier than the date specified in the original contracts, agreed that Stiff might, instead of making one delivery of all the cattle about the 20th of April, deliver 1500 or 2000 of them on the 10th of April and the rest on the 1st of May; and that the cattle should be counted at Stiff's ranch instead of Valley View, upon Stiff's furnishing the pens and fuel necessary for branding the cattle. The parties made preparation to deliver and receive the cattle in accordance with this arrangement. To this end one R. M. Sloan and Chris. Brooks, in the employ of Fisher and Stevens, under the direction of Witherspoon, proceeded at once with their men and horses to the ranch of Stiff, in Den-ton County, to brand and receive the cattle.

Appellants complain that the court refused to give their requested in-struction, to the effect that if the jury should find that the contract sued on was afterwards so altered and changed that a different period of de-livery was agreed on, and said subsequent agreement was afterwards re-lied upon and accepted by the parties in substitution of the original agreement, to find for the defendants. The court charged, in effect, of which complaint is made, that the substituted contract as alleged by de-fendants would not prevent the plaintiff from maintaining his action upon the original contract, unless it appeared that the new contract had in fact been performed by defendant, or that he was ready, willing, and able to perform the same according to its terms; and to find for defendant in the event defendant had offered to perform his part of the new contract, and was ready, willing, and able to do so.

It seems to us that the exact time and place of the delivery were not of the essence of the original contract, which provided that the delivery should be made *at or near* Valley View, and *about* the 20th day of April. These slight changes as to details in executing the original contract seem to us to have been made by the parties for their mutual convenience, in

subordination to its main purpose. Without going into the questions of accord and satisfaction and accord without satisfaction, so ably discussed by counsel, we have reached the conclusion, that unless Stiff was ready, willing, and able to avail himself of the privilege of the first delivery at his ranch in Denton County, he could not insist upon the right of the second delivery at the same place and at a later date. Under the evidence in this case, it must be held, we think, that the verdict of the jury, which is supported thereby, imports a finding that Stiff intentionally broke his contract with Fisher. These conclusions dispose of the eleventh, thirteenth, and fourteenth assignments.

3. The second assignment of error complains of the admission in evidence of the contracts of one Stevens, made through his agent, P. S. Witherspoon, about the same time and of similar import, to-wit, for the delivery of 1500 head of cattle at the same time and place. Stiff having failed, up to the 22d of April, 1890, to deliver any cattle under either contract, attempted to prove on the trial of this case that he had more cattle ready to deliver than was required to fill the Fisher contract. We think it was compentent for appellee to prove in rebuttal, or even as original evidence in developing his case, that Stiff had obligated himself to deliver cattle at the same time and place in fulfillment of the Stevens contract also. In fact, Witherspoon was the common agent of Fisher and Stevens, and the transactions were too intimately blended to fully investigate the one without acquiring knowledge of the other. The scope of this evidence was properly limited, as shown in the court's explanation appended to the bill of exceptions, and the reasons there stated for its admission seem to us to be entirely sufficient.

4. The fourth assignment of error challenges the correctness of the court's ruling in admitting testimony to prove the market value of the class of cattle called for in the contract in Cooke County generally, instead of limiting it to the value at Valley View. It was shown that there was no market at Valley View different from the market in the county generally; and it seems, therefore, clear to us, that as Valley View was a part of Cooke County, the market value of the county was a proper consideration for the jury. Certainly the proof offered showed the market value " near," if not " at," Valley View, which was all the contract required.

5. Complaint is made of the court's action in giving and refusing charges in respect to a certain mortgage executed by Stiff, in favor of the First National Bank of McKinney, on the cattle in question, to secure an indebtedness of $13,000. The requested instruction, insisted upon as correct by the ninth assignment of error, contains the proposition, that if the debt secured by this mortgage was real and not fictitious, the jury should have been instructed that the giving of this mortgage was not a fraudulent disposition of property. It is clear to us that this charge, if

given, would have withdrawn from the jury the consideration whether or not the instrument was in fact executed with a fraudulent intent. The eighth assignment insists, that the court should have instructed the jury that the mortgage of the McKinney bank, if taken with the knowledge of and for money furnished to complete the contract sued upon, would be inferior and subordinate to Fisher's right to said cattle under his contract, and that a seizure by the bank under sequestration proceedings would be subordinate to Fisher's rights. We are not prepared to say, under the facts contained in this record, that this charge correctly states the law as applicable thereto, and are also of opinion that the charge of the court complained of in the fifteenth assignment on this subject was not erroneous.

6. The third assignment of error reads as follows: "The court erred in permitting plaintiff to introduce in evidence the declarations and acts of one Mangum, in order to bind defendant Stiff by same, over objections of defendants, * * * and in refusing to exclude such testimony, upon motion of defendants." This testimony was, in substance, that one Mangum met witness Jim Witherspoon on the 22d day of December, 1890, at Pilot Point; introduced himself, and stated that Stiff had sent him from McKinney to tell them that they (the Witherspoons) could not take the cattle without paying the $13,000 mortgage claimed by the McKinney bank; also, that said Mangum came to R. M. Sloan on that day, but prior thereto, at Sloan's camp, and asked for Witherspoon; that he said he had come from McKinney and had a message from Captain Stiff for Witherspoon, stating that Witherspoon could not take the cattle, as he would not lift the mortgage; also, that on the 23d day of April, 1890, said Mangum met Chris Brooks at the pasture, and endeavored to drive seventy-five or eighty head of the cattle from the Denton County pasture through the gate into the Collin County pasture, which attempt was prevented by witness; that said Mangum claimed to represent Stiff in finding out whether the cattle were attached. One of the objections to this testimony was, that there was no proof of the agency or authority of said Mangum in making such statements or doing such acts, save his own declarations, which were insufficient to prove agency. The purpose of this testimony seems to have been to show a collusion between the McKinney bank and Stiff; and that Stiff, instead of complying with his contract in good faith, was endeavoring to use the mortgage of the McKinney bank as an obstruction to the fulfillment of his engagement. It will be seen, therefore, that the testimony was of a material character.

That the acts and declarations of the agent are inadmissible to establish agency is elementary. It is not required, however, that the proof of agency be full and satisfactory before such acts and declarations are admissible. If competent evidence has first been introduced tending to prove the agency, the acts and declarations of the agent, if otherwise

competent, may be admitted, as it is the province of the jury to pass upon the sufficiency of the proof upon this as well as other issues of fact. Mech. on Ag., sec. 106.

No complaint is made of the sufficiency of the evidence to support the verdict, nor of the failure of the court to instruct the jury to disregard these acts and declarations in case the authority to make them was not otherwise shown.

The only question then for us to pass upon is, did the evidence *tend* to show that Stiff sent Mangum with a message to Witherspoon? The circumstances seemed to demand of him that he should at least send a representative to meet Witherspoon at Pilot Point on that day, as he failed to return himself, according to promise made on the previous day. He admits that he did send Mangum, but denies that it was for this purpose. In other respects his testimony was contradicted by some of the witnesses. The circumstances tended to show, if appellee's witnesses were credible, that it was more reasonable and probable that Mangum was sent with a message to Witherspoon on that day than to carry money to a ranchman, as claimed by Stiff. The judge trying the case, with the witnesses before him, concluded that there was evidence tending to support appellee's theory on this point; and we are not prepared to hold that in this there was error. As the testimony of Mangum, though a nonresident, was not produced, and no attempt was made to procure it, we have hesitated much in approving this ruling.

7. The plea in reconvention contains a traverse of the two grounds upon which the attachment was sued out. Upon the issue thus raised as to the truthfulness of the ground that the debt was due for money obtained under false pretenses, appellants requested the following charge, which was refused: "If you believe from the evidence that plaintiff J. J. Fisher advanced to defendant E. R. Stiff the sum of $1200, which money was obtained by false pretenses made by Stiff, and the remainder of the money advanced by plaintiff was not obtained in such way, then you are instructed, that the obtaining of such money in such way would not justify the charge made in the affidavit that the money sued for was obtained under false pretenses." The evidence clearly called for this charge, if it be the law that an attachment is wrongfully sued out on this ground where only a part of the debt is due for property obtained under false pretenses. This question seems, so far as our research has gone, never to have been raised before, and must therefore be disposed of without the benefit of precedent. It seems to us an attachment in such case is permitted by the statute only to secure *the* debt, and none other, due for the property so obtained, and that an affidavit, for instance, which alleges that a debt of $10,000 is due for property obtained under false pretenses, where only about one-tenth of the debt is due for prop-

erty obtained in that way, must be held to be not only literally but substantially false; and that a seizure of a debtor's property to secure so large a sum is wrongful, unless upon some other ground the attachment is lawfully sued out.

We are therefore constrained to hold that for this error alone the judgment must be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered February 7, 1893.

Pending a motion for rehearing, the opinion of the Supreme Court was. had upon certified question as to whether the trial court should have given the requested charge, relating to the affidavit for attachment, as. set forth in the last paragraph of the foregoing opinion. Stiff v. Fisher,. 85 Texas, 556. Motion overruled.