RICHARD D. WELSH v. MARY JOY WOODS AND WOODSON K. WOODS, III, FIRST NATIONAL BANK OF HAWAII, KAPIOLANI BRANCH, AND WALSTON & CO., INC.

No. 4283.

OCTOBER 24, 1963.

TSUKIYAMA, C.J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY MIZUHA, J.

Plaintiff's amended complaint contained a first count based on quantum meruit for professional services rendered. He alleged that he had "rendered professional services to defendant of a reasonable value of $50,000 of which sum defendant has paid plaintiff the sum of $6,000, leaving a balance due and owing plaintiff the sum of $44,000 * * *." Upon the argument plaintiff submitted his case on this count.

Garnishee process was served upon Woodson K. Woods, III, First National Bank of Hawaii and Walston & Co., Inc. They filed disclosures, only that of the bank showing anything on hand. Defendant then moved to discharge the garnishees on the ground that the claim of plaintiff was unliquidated in its nature and therefore, not the type of action that will support a garnishment. Plaintiff appeals from the order granting the motion to discharge garnishees.

Historically, an action based on quantum meruit was an action to enforce an implied contract. "* * * One who had incurred a detriment at the request of another, by rendering service, * * * with the reasonable expectation of compensation * * * was as fully entitled, in point of justice, to enforce his claim at law, as one who had acted in a similar way upon the faith of an express promise. * * *" Ames, *History of Assumpsit,* 2 Harv. L. R. 53, 60 (1888). From its very origin, garnishment has most often

been authorized in personal actions founded on contract, express or implied. *Wise & Jackson* v. *Nott,* 283 S.W. 1110, (Tex. Civ. App.). See *Turner* v. *Schwarz,* 140 Md. 465, 117 Atl. 904.

The question before us on this appeal is whether our garnishment statute R.L.H. 1955, § 237-1 (Supp. 1961) permits garnishee process to be issued in conjunction with an action based on quantum meruit for professional services rendered.

Our statute, as far as material, is as follows:

"When any goods or effects of a debtor are concealed in the hands of an attorney, agent, factor or trustee (in this chapter jointly and severally included in the term 'garnishee'), so that they cannot be found to be attached or levied upon, or when any debt is due from any person (also included under the term 'garnishee') to a debtor, or when any person has in his possession for safekeeping any moneys of the debtor, *any creditor may bring his action against a debtor* and in his petition for process, or by subsequent ex parte motion and amendments of the complaint at any time before judgment, may request the court to insert in the process a direction to the officer serving the same to leave a true and attested copy thereof with the garnishee * * *." (Emphasis added.)

The remedy of garnishment under our statute is limited to actions brought by a "creditor" against his "debtor." The relation of creditor and debtor necessarily implies the existence of a debt. "Ordinarily, a 'debt' implies a sum of money owing upon a contract, express or implied. * * * In its more general sense it is defined to be that which is due from one person to another, whether money, goods, or services, and which one person is bound to pay to or perform for another. In ordinary parlance it means any claim for money, and a debt is properly

said to be due, in the sense of owing, when it has been contracted and the liability of the debtor fixed." *Henriques* v. *Vinhaca,* 20 Haw. 702, 708.

In *Fisher* v. *Consequa,* 2 Wash. C.C. 382, 9 Fed. Cas. 120, 121, the court stated: "* * * A promise, whether express or implied, to pay as much as certain goods or labor are worth, or as much as the same kind of goods may sell for on a certain day, or at a certain market; or to pay the difference between the value of one kind of goods and another, creates in common parlance, a debt; and the person entitled to performance does not speak of his claim, as for damages, but for a debt, to the amount which he considers himself entitled to. * * *"

In *Roelofson* v. *Hatch,* 3 Mich. 277, the court in reversing an order of the lower court which set aside a writ of attachment upon the ground that the writ was issued for unliquidated damages, said at page 279:

"* * * What is an indebtedness? It is the owing of a sum of money upon a contract or agreement and in the common understanding of mankind, it is not less an indebtedness that such sum is uncertain. The result of a contrary doctrine would be, to hold any liability which could only be the subject of a general *indebitatus assumpsit, quantum meruit,* or *quantum valebant* count in a declaration, such an indebtedness as could not be the subject of this remedy by attachment. * * *"

In *Phelps* v. *Columbia Phonograph Broadcasting System, Inc.,* 255 Ill. App. 294, 296, an original attachment was brought against the defendant for legal services rendered under a statute which provided: "* * * That in any court of record having competent jurisdiction, a creditor may have an attachment against the property of his debtor, or that of any one or more of several debtors, when the indebtedness exceeds $20, * * *." In reversing

the lower court's order quashing the writ, which was based on defendants motion that the claim was for unliquidated damages, the appellate court said at pages 304-05:

"* * * If the defendant's contention is correct, then a creditor is barred from the benefit of original attachment under any contract for goods sold, or work or labor done, where there is no express agreement as to price or compensation, although the value of the goods or services is clearly ascertainable by competent, legal evidence. The mere fact that witnesses might differ as to the value of the goods or services should not deprive a creditor of the benefit of the act, as the law fixes a standard for determining the value of the goods or services. The defendant's construction, in our opinion, does violence to the plain intent of the act, and in practice would emasculate what was intended to be a useful remedy for a creditor."

Defendant contends that the claim of the plaintiff is unliquidated, and that garnishment will not lie in this type of action. To support her contention that garnishment does not lie in the action brought by plaintiff, defendant relies on *Henriques* v. *Vinhaca, supra,* wherein the plaintiff sought to recover damages in the amount of $1,000 for an alleged breach of an express written agreement to assign a lease. In holding that under our garnishment statute the legal obligation to answer by way of damages does not create the relation of creditor and debtor, this court stated at page 709: "* * * it is obvious that the claim sued upon does not possess the requisite certainty, nor has it any of the essentials of a debt. The claim itself does not furnish any standard or means of arriving at the liability, if any, of the defendant. It is purely speculative, uncertain and contingent." See *Hale Bros.* v. *Milliken,* 142 Cal. 134, 75 Pac. 653; *Bringas* v.

*Sullivan,* 126 Cal. App. 2d 693, 273 P.2d 336. Since the case was heard on demurrer no facts were furnished as to the damages sustained. However, the significant point is that the claim was purely one for breach of an executory contract. The holding of the case was that garnishment does not lie for "unliquidated damages."

The instant case which is a claim for an indebtedness by reason of plaintiff's performance of professional services is distinguishable from *Henriques* v. *Vinhaca, supra,* where the court said at page 710: "The claim not being a debt it follows, therefore, that the legal duty, if any, to respond in damages for the alleged breach of the instrument sued upon in this action, does not create the relation of creditor and debtor between the plaintiff and the defendant, within the meaning of the statute, * * *." Here, it is the implied promise to pay the reasonable value of the services rendered that gives rise to the creditor-debtor relationship between attorney and client. Although there was no express agreement as to the exact compensation to be paid for the professional services rendered by the plaintiff, the remedy of garnishment applies by the terms of the statute when there is this relationship of creditor and debtor between the plaintiff and defendant, and the amount of defendant's liability, if any, can be determined by appropriate judicial procedure. *Roelofson* v. *Hatch, supra; Austin Nat'l Bank* v. *Bergen,* 47 S.W. 1037 (Tex. Civ. App.); *Stiff* v. *Fisher,* 2 Tex. Civ. App. 346, 21 S.W. 291; *Thomas* v. *Buehler,* 254 S.W.2d 223 (Tex. Civ. App.); *Wise & Jackson* v. *Nott, supra.* See *Goldblum* v. *Ford Local No. 50,* 319 Mich. 30, 29 N.W.2d 310. The fact that witnesses may differ as to the reasonable value of the services does not place the claim in a class that will not support garnishment. *Evans* v. *Breneman,* 46 S.W. 80 (Tex. Civ. App.). *Cf., Phelps* v. *Columbia Phonograph Broadcasting System, Inc., supra.*

Likewise, despite the objection that the claim was unliquidated, attachment has been permitted where it was found that the defendant was indebted to the plaintiff and the amount capable of ascertainment. *Phelps* v. *Columbia Phonograph Broadcasting System, Inc., supra; Hale Bros.* v. *Milliken, supra; Hall* v. *Parry,* 55 Tex. Civ. App. 40, 118 S.W. 561; *Force* v. *Hart,* 205 Cal. 670, 272 Pac. 583; *Wise & Jackson* v. *Nott, supra; Fisher* v. *Consequa, supra.*

It is argued that the garnishment statute, unlike the attachment statute,[1] contains no provision for a bond. It does, however, provide for release of such part of the garnishee fund as may be "excessive in amount in comparison with the amount of the judgment that the plaintiff might obtain in the action," leaving the garnishment applicable only to "a reasonable amount to be so secured * * *." R.L.H. 1955, § 237-1(d). Appellee contends that this "indicates that the legislature intended that garnishee process should issue only in support of actions to recover liquidated claims." This does not follow. The statute vests in the court, not the clerk, the duty of making this determination. Something more than a routine comparison of amounts is contemplated, and this is borne out by the other provisions of the subsection.

It further is argued that since the fourth paragraph of R.L.H. 1955, § 6-59, provides in connection with defalcations by government employees that retirement system funds may be garnisheed "notwithstanding the fact that the claim in certain cases may be for an unliquidated amount or may sound in tort," that constitutes recognition that under the general garnishment statute, chapter 237, the claim must be for a liquidated amount. A more likely explanation is that this language was used in order to

---

[1] R.L.H. 1955, c. 233, part I.

make it unnecessary to determine the nature of the action, which may be brought in cases of failure to properly account for government property or funds as well as in cases of embezzlement or theft.

We are not concerned with the policy of the statute. Perhaps a bond should be required but that argument should be addressed to the legislature.

It was error for the court below to grant the motion to discharge the garnishees.

Reversed.

*Richard D. Welsh* and *Howard K. Hoddick* for plaintiff-appellant.

*A. William Barlow* and *H. William Burgess* for defendant-appellee.

DISSENTING OPINION OF WIRTZ, J.

The remedy of garnishment, being a statutory creature, has only the scope which the legislature accorded it. Since it is in derogation of the common law, the statutory terms governing its application must be strictly construed in favor of the persons against whom it may be invoked. *Davies & Co.* v. *Hilo Pineapple Co.,* 27 Haw. 651. Being summary in its effect and liable to be abused and used oppressively, its application should be carefully guarded and confined strictly within the limits prescribed by the statute.

In *Henriques* v. *Vinhaca,* 20 Haw. 702, 707, this court held that the remedy of garnishment[1] was limited "to actions brought by a 'creditor' against his 'debtor' " which necessarily implied "the existence of a debt."

The question now before this court is whether the reasonable value of legal services rendered constituted a

[1] Under R.L.H. 1905, § 2114 (now R.L.H. 1955, § 237-1, as amended).

"debt" so that an action in *quantum meruit* therefor will support the issuance of garnishee process under R.L.H. 1955, § 237-1, as amended.

In a broad sense, "debt" simply means something due and owing. However, traditionally in the law, it has been given a narrower and more restricted meaning. A debt arises out of a contractual relationship but not all contracts result in a debt. At common law, a "debt" signified a certain or definite sum of money. However, this has not meant a particular fixed sum of money, but such a sum as can be ascertained from fixed data by computation, or which is capable of being reduced readily to a certainty.

An annotation in 12 A.L.R. 2d 787, 796, on the subject of what constitutes an action for "debt" within the meaning of attachment and garnishment statutes, expresses the following requirement that the sum involved be certain: "In conformity with the general rules regarding the common-law action of debt, it has been held that such an action, within the attachment or garnishment statutes, will not lie unless the suit is either for a fixed and definite sum of money, or for a sum of money which can be ascertained from fixed data by computation or is capable of being readily reduced to a certainty, or is one where the plaintiff can hold the defendant to bail" citing in support, among others, the cases of: *Fisher* v. *Consequa,* 2 Wash. C.C. 382; *Wilson* v. *Wilson,* 8 Gill 192 (Md.), 50 Am. Dec. 685; *Roelofson* v. *Hatch,* 3 Mich. 277; *Friedman* v. *Mandelbaum,* 25 N.J. Misc. 157, 51 A.2d 260. Later, the annotation concludes at page 799: "Clearly, within the purport of the rule discussed at the beginning of this section, a sum which is sought to be recovered by way of attachment or garnishment which is entirely hypothetical or conjectural, and unliquidated or uncertain as to the amount owed, is not an action for a 'debt' within the statutes."

This view that the concept of "debt" is opposed to an unliquidated sum or claim was clearly expressed in *Henriques* v. *Vinhaca, supra,* 20 Haw. 702. While the claim in *Henriques* was not only unliquidated in the sense of being uncertain but also contingent, still the fact remains that while not contingent the instant claim is still clearly unliquidated in that its ascertainment requires the exercise of judgment, discretion and opinion and not mere calculation or computation. As indicated generally, as well as in *Henriques,* the time for ascertainment of the certainty of the claim, or the capacity of the claim to be reduced to certainty, is the time when process is issued.

The most complete discussion of liquidation in connection with the reasonable value of services rendered is found in the case of *Blick* v. *Mercantile Trust & Deposit Co.,* 113 Md. 487, 77 Atl. 844. This involved an action to recover for services rendered in making investments, collecting income and generally acting as defendant's agent for a period of nine years. The plaintiff attempted to garnishee the Trust Company but the trial court sustained the motion to quash on the ground that the alleged indebtedness was for an unliquidated amount. The court cited *Steuart* v. *Chappell,* 98 Md. 527, for statements contained therein which the court considered as the most concise and authoritative statement of the law in this area:

"* * * *Mr. Rood,* in his work on *Garnishment,* says: 'Demands, the amount of which cannot be ascertained by computation, but only by the verdict of a jury, or in other similar manner, are not included in the terms of statutes declaring what property and debts may be attached by garnishment.' * * *

"In *Poe's Practice,* sec. 415, that author said: 'As the result of the authorities, it may be stated that the claim, to be within the Act, must be one for an *ascertained* amount of liquidated indebtedness to which a

plaintiff can *properly* swear, and the cause of action which must be filed with the declaration must be one which either on its face shows the liability of the defendant, *and the amount of such liability,* or which itself furnishes the standard or means of arriving at such liability.' * * * 'Unliquidated damages are such as rest in *opinion* only, and must be ascertained by a jury. They are damages which cannot be ascertained by computation or calculation * * *." *Butts* v. *Collins,* 13 Wend. (N.Y.) 139.

The court applied these principles and concluded that the ascertainment of this claim required the exercise of judgment, discretion and opinion and not mere calculation or computation. Therefore the court concluded that the claim was unliquidated and the writ would not lie under their statute which provided: "* * * No attachment shall issue (except as hereinafter mentioned), unless there be an affidavit that the debtor is *bona fide* indebted to the creditor in the sum of ———— * * *." The court in conclusion said: "In each case the question is whether the *contract itself fixes the amount or furnishes a standard* by which the amount may be certainly determined. If it does, the attachment will lie. If it does not, it will not lie." (Emphasis added.)

The *Steuart* case involved an action to recover for professional legal services rendered. The court sustained the action of the trial court in quashing the writ of attachment on the ground that the claim was unliquidated. The court in reaching its decision quoted the trial judge who said: "There is no agreement alleged by which the defendant bound himself to pay any particular sum, and the value of these services is put at what the plaintiff himself assumes they are worth. This is by no means the real test of their value; the real test is what they are reasonably worth, and that must be determined by a jury after testi-

mony." The court cited the case of *Calvert* v. *Coxe,* 1 Gill 95 (Md.), which was an action by an attorney to obtain compensation for professional services under a *quantum meruit* count. The court in that case disagreed as to the type of evidence that was admissible but the majority of the court held that it was not competent for the plaintiff to offer evidence of what was paid to a particular attorney for like services. The court in the *Steuart* case concluded by saying: "But whatever may be thought of these divergent views, neither affords any certain measure or standard for ascertaining the value of the services without the aid of inferences from extrinsic facts and circumstances, and such evidence would not bring this case within the rule herein stated."

New Jersey has followed the same rule that to warrant attachment (or garnishment) under a similar statute requiring an affidavit of indebtedness the claim must be liquidated in that it is for a sum certain or the contract must contain a measure or standard for ascertaining the amount of the claim. *Friedman* v. *Mandelbaum, supra,* 25 N.J. Misc. 157, 51 A.2d 260, reaffirmed the rule as stated in *Hecksher* v. *Trotter,* 48 N.J.L. 419, 5 Atl. 581, 584: "The general rule is that unliquidated damages, resulting from the violation of a contract, cannot be recovered by attachment, unless the contract affords a certain measure or standard for ascertaining the amount of the damages. * * * The standard should be the subject-matter of the contract. * * * The standard must be shown by the contract *without the aid of inferences from extrinsic facts or circumstances."* (Emphasis added.)

The language of Mr. Justice Washington, of the Supreme Court of the United States, in *Fisher* v. *Consequa, supra,* 2 Wash. C.C. 382, must be considered in the light of the rule he later laid down in *Clark* v. *Wilson,* 3 Wash. C.C. 560, where he reached the opposite result when faced

with a similar factual situation. In considering *Fisher* v. *Consequa, supra,* the court in *Clark* v. *Wilson, supra,* had this to say: "The principle decided in that case was, that a demand arising *ex contractu,* the amount of which was ascertained, or which was susceptible of ascertainment by some *standard, referable to the contract itself,* sufficiently certain to enable the plaintiff, by affidavit, to aver it, or a jury to find it; might be the foundation of a proceeding by way of foreign attachment * * *." (Emphasis added.) In dissolving the attachment on a claim of damages against one who had chartered a ship for renouncing the charter party, the court concluded: "This, then, is a case, in which unliquidated damages are demanded; in which, the contract alleged as the cause of action, affords no rule for ascertaining them; in which, the amount is not and cannot, with propriety, be averred in the affidavit; and which is, and must be, altogether uncertain, until the jury have ascertained it: for which operation, no definite rule can be presented to them."

In view of the foregoing it should clearly appear that this court in *Henriques* v. *Vinhaca, supra,* 20 Haw. 702, 709, used the following language advisedly in adopting the "standard referable to the contract" rule where it concluded:

"Viewed in the light of the authorities cited it is obvious that the claim sued upon does not possess the *requisite certainty,* nor has it any of the essential elements of a debt. The claim itself *does not furnish any standard or means* of arriving at the liability, if any, of the defendant. It is purely speculative, uncertain and contingent. There is *no way, other than the verdict of a jury, or other appropriate judicial procedure, whereby the amount* of the defendant's liability, if any, *can be determined.* No person can calculate the amount for which a jury might return

a verdict. Not until merged into a judgment can it be considered a debt. The claim is unliquidated and it furnishes *no standard or means* whereby it can be liquidated and made certain in amount.

"The claim not being a debt it follows, therefore, that the legal duty, if any, to respond in damages for the alleged breach of the instrument sued upon in this action, does not create the relation of creditor and debtor between the plaintiff and the defendant, within the meaning of the statute, and that the plaintiff is not entitled to garnishment." (Emphasis added.)

In using the language that the amount of the claim sued upon must be accurately and definitely ascertainable by a standard referable to the contract itself in order to warrant garnishment, this court clearly intended to create a rule whereby the exact amount of the indebtedness could be determined by reference to the contract through mere arithmetical computation. In the instant case, it is impossible to ascertain the amount due and owing since, in the absence of an express agreement as to the plaintiff's compensation, the reasonable value of his services rests in opinion alone. Neither the contract nor the complaint set forth a standard for determining the reasonable value of these services. This is clearly a case where only the trier of fact upon trial can determine this value. Until the claim is liquidated through judgment the remedy of garnishment is not available under R.L.H. 1955, § 237-1.

There has been a tendency to widen the effect of garnishment proceedings by an increasingly liberal interpretation of the statute involved and the means of liquidating indebtedness, as exemplified by the cases cited in the majority opinion. The interpretation placed on "indebtedness" by these courts has abrogated the distinction between liquidated and unliquidated damages insofar as the application of the remedy of garnishment is concerned.

The writ can now issue on a mere showing of damages arising out of a contractual relationship.

One can only wonder whether this tendency may have been induced, albeit subconsciously by the protection, or relief, afforded the defendant under their garnishment statutes.[2] The defendant has been given some measure of protection through the requirement that plaintiff file an accompanying affidavit of indebtedness. Ill. Rev. Stat., Ch. 11, § 2 (1943); Mich. Comp. Laws, § 14857 (1929); Vernon's Texas Statutes (Rev. Civ. Statutes), Art. 4076 (1948); Cal. Code Civ. Proc., § 538 (1955). It is also required, for the defendant's protection, that plaintiff furnish a bond. Ill. Rev. Stat., Ch. 11, § 4a (1943); Vernon's Texas Statutes (Rev. Civ. Statutes), Art. 4077 (1948); Cal. Code Civ. Proc., § 539 (1955). In addition, the defendant is given relief in that he may substitute a bond in lieu of his impounded assets. Ill. Rev. Stat., Ch. 11, §§ 14, 15 (1943); Mich. Comp. Laws, § 14900 (1929); Vernon's Texas Statutes (Rev. Civ. Statutes), Art. 4084 (1948), originally enacted in 1889; Cal. Code Civ. Proc., § 540 (1955). None of these protective or relief measures are present in the statutory remedy of garnishment in Hawaii so as to tempt this court to liberalize the rule of *Henriques* v. *Vinhaca, supra,* 20 Haw. 702, by extending it to cover unliquidated damages.

Some of these jurisdictions have found assistance in their liberalized interpretation of indebtedness from expressed legislative intent pointing to the broader meaning of "debt." In *Phelps* v. *Columbia Phonograph Broadcasting System, Inc.,* 255 Ill. App. 294, the court, in concluding that attachment was applicable to a claim based in *quantum meruit* for the reasonable value of legal serv-

---

[2] The statutes referred to are substantially the same as the original enactments: in Illinois, 1871; Michigan, 1861; Texas, 1874; California, 1872.

ices even though the amount thereof was admittedly unliquidated, found support and comfort from the legislative intent found in a related section of the statute when it reasoned at page 304:

"Under section 31 of our Attachment Act, Cahill's St. ch. 11, [sec.] 31, an attachment in aid will lie even for a tort claim and a plaintiff may commence a tort action and immediately thereafter sue out a writ of attachment in aid of the suit. (*Schulenberg* v. *Farwell*, 84 Ill. 400.) Section 31 provides that plaintiff, in his affidavit, must show 'his right to an attachment under the first section of this Act,' and, therefore, even in a tort action he must aver that the defendant is indebted to him in a certain amount, thus plainly showing that the legislature did not use the words 'debtor' and 'indebtedness' in a narrow and strictly technical sense. In our judgment section 31 cannot be ignored entirely in interpreting sections 1 and 2, and with such a broad, liberal attachment in aid section, why should sections 1 and 2 be given the interpretation that defendant contends for, especially as many of the courts of the United States, in interpreting attachment acts, have disregarded Blackstone's narrow, technical definition of the word 'debt'?"

*Stiff* v. *Fisher*, 2 Tex. Civ. App. 346, 21 S.W. 291, the leading case in that jurisdiction[3] for the extension of the Texas attachment and garnishment statute to unliquidated claims found support in the use by the legislature of the word "demand" as well as that of "debt" in the statute, by reasoning: "* * * We are of opinion that the words

---

[3] Relied on in *Evans* v. *Breneman*, 46 S.W. 80; *Hall* v. *Parry*, 118 S.W. 561; *Wise & Jackson* v. *Nott*, 283 S.W. 1110; *Thomas* v. *Buehler*, 254 S.W.2d 223. *Austin Nat'l Bank* v. *Bergen*, 47 S.W. 1037, applies the same rule without reliance on any authority.

'debt' and 'demand,' as used in our attachment statute, should not be so restricted in their meaning and scope as appellants contend, and that no error was committed in overruling the motion to quash the attachments. While a strict compliance on the part of the attaching creditor with the statute has been steadily enforced in this state, it seems to us that, in construing the meaning of the law itself, to adopt an illiberal rule is to disregard the expressed will of the legislature. Rev. St., final title, § 3. * * *" 21 S.W. 293. As was pointed out in a similar case, also involving a claim for unliquidated damages for breach of contract in upholding attachment under a substantially similar statute: "The word 'demand' is broader than the word 'debt,' and, although the damages claimed were unliquidated, still we are of the opinion that the claim was a demand arising upon contract within the meaning of the statute." *Messinger* v. *Dunham,* 62 Ark. 326, 35 S.W. 435-436.

The various states have zealously and even jealously guarded the rights of its citizens against the incursions of nonresidents. Most jurisdictions have not openly discriminated in the application of attachment and garnishment remedies to claims against nonresidents, although such may be found in the goodly number of cases involving nonresidents which have liberalized the concept of indebtedness. In a few instances, legislation has paved the way for the preference of claims against nonresidents. In *Hale Bros.* v. *Milliken,* 142 Cal. 134, 75 Pac. 653, the court allowed attachment (garnishment) against a nonresident defendant for a claim for the reasonable value of the use and occupation of a building, the completion of which was delayed through alleged breach of contract, under its statute providing for such in actions "upon a contract, express or implied, against a defendant not residing in

this State" (C.C.P., § 537, para. 2).[4] In doing so, the "standard referable to the contract" rule established in *Dunn* v. *Mackey*, 80 Cal. 104, 22 Pac. 64, was liberalized to cover situations where the damages were reasonably ascertainable by a basis of ascertainment not necessarily found in the contract itself. This liberalized rule was thereafter applied without regard to the residency of the defendant in *Force* v. *Hart*, 205 Cal. 670, 272 Pac. 583, and finally to the more speculative and uncertain area of unliquidated damages in a claim for loss of future profits in *Bringas* v. *Sullivan*, 126 Cal. App. 2d 693, 273 P.2d 336, even though a resident defendant was there involved.

Michigan presents the anomalous situation of having adopted the "standard referable to the contract" rule while misapplying it. *Roelofson* v. *Hatch*, *supra*, 3 Mich. 277. Later cases, while still mouthing the rule, extended it further in misapplication. *Old Ben Coal Co.* v. *Universal Coal Co.*, 248 Mich. 486, 227 N.W. 794; *Talbert* v. *Solventol Chemical Prods., Inc.*, 304 Mich. 557, 8 N.W.2d 637. In *Goldblum* v. *Ford Local No. 50*, 319 Mich. 30, 29 N.W.2d 310, in commenting on the *Talbert* case, *supra*, and stating that "the future value to plaintiff of the contract breached by defendant was *sufficiently* ascertainable by a standard referable to the contract to permit garnishment" (emphasis added), the court actually does not even pretend to require liquidation, but only a reasonable ascertainment of the damages claimed. The Revised Judicature Act of 1961, effective January 1, 1963 (Mich.), applying the garnishment remedy to a "claim evidenced by contract" has "legalized," as it were, this venture of the Michigan court into the field of judicial legislation.

Garnishment is a harsh statutory remedy which may

---

[4] As to resident defendants the requirement was "upon a contract, express or implied, *for the direct payment of money*" (emphasis added, C.C.P., § 537, para. 1).

not be enlarged nor cut down by construction. *Cold Metal Process Co.* v. *McLouth Steel Corp.* (6th Cir. 1942), 126 F.2d 185. Our garnishment statute, R.L.H. 1955, § 237-1, clearly expresses the intent of the legislature that the remedy shall be available only to enforce the payment of a "debt." Apart from providing none of the safeguards furnished elsewhere for the protection and relief of the defendant in his property rights, our statute contains no expression of legislative intent other than that found in the use of the words "creditor" and "debtor."[5] *Henriques* v. *Vinhaca, supra,* 20 Haw. 702, clearly holds that a claim for unliquidated damages does not constitute a "debt." Nothing can be found to warrant and justify extending the concept of indebtedness beyond the minimum requirement set forth in *Henriques* v. *Vinhaca, supra,* that to constitute a "debt," the claim be definitely ascertainable by a fixed standard referable to the contract itself. To embrace all claims based on contract, express or implied and whether liquidated or not within the meaning of "debt" would not only flaunt clearly expressed legislative intent in the face of established legal interpretation but would cause undue hardship on a defendant, to say nothing of harrassment and inconvenience, in derogation of his property rights. It would nullify by rendering impracticable and unworkable the only relief now available to a defendant under R.L.H. 1955, § 237-1(d) for release of such

---

[5] It is highly significant that the legislature in specifically applying the remedy of attachment to embrace "any action upon a contract, express or implied" (R.L.H. 1955, § 233-2) at the same time retained the safeguard to the defendant in his property rights by requiring the plaintiff to file an attachment bond conditioned "that the plaintiff will prosecute his action without delay, and will pay all costs that may be adjudged to the defendant, and all damage which he may sustain by reason of the attachment * * *, should the same be wrongfully, oppressively or maliciously sued out * * *." R.L.H. 1955, § 233-4, originally Act 84 enacted in 1905 (L. 1905, c.84) as amended by Act 60, S.L. 1909, approximately fifty years after the remedy of garnishment had been created by the Civil Code of 1859 (Art. XLII).

part of the garnishee fund as may be "excessive in amount in comparison with the amount of the judgment that the plaintiff might obtain in the action" as such determination in unliquidated claims could only be made after a full-blown hearing of plaintiff's case in chief, if not of the entire case.

The extension of the statutory remedy of garnishment beyond the confines of indebtedness as defined by *Henriques* v. *Vinhaca, supra,* is solely within the province of the legislature. It is a far better forum than the court to balance the respective rights of the parties with appropriate safeguards. It is a relatively simple matter to file a suit in law but often difficult to reduce a claim to judgment.

I would affirm the order of the trial court granting the motion to discharge the garnishees.