THOMAS A. DRYDEN *et al.*, Respondents, *v.* SANFORD B. KELLOGG, Appellant.

April 25, 1876.

1. A sale and delivery of personal property in the vendor's possession implies a warranty of the title, in the absence of an express agreement to the contrary.

2. Buildings on leasehold property which, by the condition of the lease, may be removed by the lessee at the expiration of the term, may be sold and transferred as personalty. It is immaterial that the right of removal is conditioned upon the final fulfillment of the stipulations in the lease.

3. An undertaking by the assignee to pay the rents and taxes on leasehold property will constitute a sufficient consideration to uphold an assignment of the lease.

4. A purchaser of personal property is not required, before proceeding against his vendor upon the warranty of title, to wait for an actual deprivation by the true owner. He may surrender the property voluntarily, but must be then able to show conclusively that his surrender was to the paramount owner.

5. The measure of damages, upon breach of warranty of title, is the amount

of the purchase money, with interest, to which may be added expenses necessarily incurred in defense of the failing title.

6. A liability upon breach of warranty is a "debt" within the meaning of the statute which provides for suits against stockholders, in the event of dissolution of a corporation.

7. A contract liability which may be sued upon at any time is not a "debt which is not to be paid within one year from the time the debt is contracted," within the meaning of the statute above mentioned.

8. The requirement that, in order to hold a stockholder liable, suit must be brought against the corporation within one year after the debt shall become due, has no application where the corporation has become bankrupt before the expiration of the year.

Appeal from St. Louis Circuit Court.

*Affirmed.*

*Sanford B. Kellogg*, *pro se*, cited: Erickson *v.* Nesmith, 4 Allen, 236; Andrews *v.* Callender, 13 Pick. 490.

*Glover & Shepley*, for respondents, cited: Kritzcas *v.* Woodson, 19 Mo. 327; Ochiltow *v.* Iowa R. R. Co., 54 Mo. 113; Cable *v.* McCune, 26 Mo. 371; Blair *v.* Rankin, 11 Mo. 440.

*Dryden & Dryden*, for respondents, cited: Dresser *v.* Ainsworth, 9 Barb. 619; Bell on Sales, 95, in 49 Law Lib. 50; 1 Washb. on Real Prop. (1st ed.) 2, sec. 4, book 1; Aldrich *v.* Parsons, 6 N. H. 555; Osgood *v.* Howard, 6 Greenl. (Me.) 452; Russell *v.* Richardson, 1 Fairf. 431–433; Wills *v.* Bannister, 4 Mass. 515; Doty *v.* Gorham, 5 Pick. 487; Ashnum *v.* Williams *et al.*, 8 Pick. 402; Vanness *v.* Packard, 2 Pet. 137; Hines *v.* Ament, 43 Mo. 300 (Bliss, J.); Bircher *v.* Parker, 43 Mo. 451; Bircher *v.* Parker, 40 Mo. 120; Sweetman *v.* Prince, 26 N. Y. 232, 233; Bust *v.* Dewey, 31 Barb. 543; Payne *v.* Rodden, 4 Bibb, 304; 2 Story on Sales, sec. 367; Funk *v.* Cresswell, 5 Clarke (Iowa), 88; Rawle on Cov. 250; Crittenden *v.* Posey, 1 Head, 311; Noel *v.* Wheatley, 30 Miss. 181; Arthur *v.* Moss, 1 Oreg. 193; Armstrong *v.* Percy, 5 Wend. 535; Dickson *v.* Desire's Admr., 23 Mo. 166; Tong *v.* Matthews, 23 Mo. 437; Foster *v.* McO'Blennis, 18 Mo. 91; 3 Bl. Com., side p. 154; 1 Wag. Stat. 180, par. xiv., sec. 1; 1 Bouv. L. Dic., title Debt; 1 Burr. L. Dic., title Debt; Com-

monwealth v. Jailer, 4 Serg. & R. 506; Gray v. Bennett, 3 Metc. 526; State Savings Assn. v. Kellogg, 52 Mo. 583; Carver v. Braintree Mfg. Co., 2 Story, 432; Mill Dam and Foundry Co. v. Hovey, 21 Pick. 417; Haynes v. Brown, 36 N. H. 545; Gray v. Bennett, 3 Metc. 526; Provident Saving Inst. v. Jackson Place Skating and Bathing Rink, 52 Mo. 552, 557; Hawthorne v. Calef, 2 Wall. 10; Corning v. McCullough, 1 N. Y. 47; Morris v. Wrenshall, 34 Md. 492; Perry v. Turner, 55 Mo. 428.

LEWIS, J., delivered the opinion of the court.

On March 24, 1869, the Southwestern Freight and Cotton Press Company, a corporation created under the laws of Missouri, proposed in writing to sell to the plaintiffs one steam-engine and boiler, at the price of $1,500, and all the improvements then standing on certain lots at the intersection of Main and Plum streets, St. Louis, at the price of $2,000, all to be paid in cash; also, to transfer to plaintiffs, free of charge, an unexpired lease of the same lots, plaintiffs agreeing to pay all taxes on the property, and the annual rents thereafter to fall due. Plaintiffs accepted the offer, paid the money, and were duly put in possession of their purchase. The corporation gave them a receipt specifying the articles sold, with their prices, as above; the improvements consisting of two brick houses and one gravel-roof shed. The lease referred to bore date October 23, 1865, and was for a term of eleven years. It contained a stipulation by which the lessee might remove any improvements from the premises at the expiration of the term if the antecedent conditions of the lease were fully satisfied. The corporation delivered a written assignment of the lease, in which the expressed consideration was " for value received," and the plaintiffs gave their sealed obligation to comply with its terms.

Prior to these transactions, in May, 1868, the corporation had executed a deed of trust conveying the same property, leasehold and all, to John G. Scott and Daniel H. Donovan,

as trustees, to secure the holders of certain bonds of the company. On June 10, 1869, the corporation was adjudicated a bankrupt, and, in due course, its effects were turned over to an assignee. On October 15, 1869, the trustees made sale of the property—being joined therein by the assignee of the bankrupt corporation—to satisfy the deed of trust. At this sale plaintiffs bought the engine and boiler for $225, and the rest of the property was struck off to another bidder. Plaintiffs thereupon surrendered their possession, delivering the keys to the assignee in bankruptcy. At the time of their original purchase, plaintiffs had no knowledge of any incumbrance on the property.

On May 16, 1873, this suit was instituted against the defendant, as a stockholder of the corporation to the amount of $4,000 par value. The petition set forth substantially the facts above recited, averring a warranty of title in the sale to plaintiffs by the corporation, and a breach thereof in the virtual eviction by the trustees'. sale. Plaintiffs claimed that an indebtedness thereby accrued to them from the corporation of $3,500, and that defendant, by the dissolution of the latter, became liable, under the statute, to pay the same with interest *pro tanto* to the amount of his stock.

The answer took issue upon the material allegations in the petition, and generally upon any liability of defendant. It averred that "the said company was a corporation organized under the 69th chapter of the General Laws of the State of Missouri concerning manufacturing and business companies; that, by the provisions of said chapter, no liability attaches to any stockholder by reason of any such liability as is alleged in said petition; that the said alleged liability or indebtedness of the said company was not a debt contracted by the said company which was to be paid within one year from the time of the alleged contracting of the same." Defendant claimed a further exception in the fact that "no suit was brought by plaintiff against said company upon said alleged claim and demand against it within one

year after the accruing of the said alleged demand;'' and stated that, in a suit by another creditor of the company, he had already been compelled to pay, as stockholder, the sum of $3,455.95; so that his liability to these plaintiffs could not in any case exceed the sum of $544.05.

Plaintiffs in reply denied that their claim " was a debt which was not to be paid within one year from the time when it was contracted,'' within the meaning of the statute; assigned the company's bankruptcy as a reason for their not suing it within a year, and prayed judgment for the sum of $544.05, stated by defendant to be the limit of his possible liability.

The testimony tended, generally, to prove the plaintiffs' allegations. A verdict was rendered against defendant for $544.05.

Defendant saved an exception to the admission in evidence of an entry in the books of the corporation. But, as the ground of his objection was not stated, and we fail to perceive that the testimony was either irrelevant or incompetent, the point will not be further considered. The only questions proper for our examination were developed in the giving and refusing of instructions, and will be here discussed in order.

1. Was a warranty of title to the property implied in the sale by the Southwestern Freight and Cotton Press Company to the plaintiffs? If all the subjects of the sale were personalty, the question is sufficiently answered by that fact. Every sale and delivery of personal property in the vendor's possession includes a warranty of the title, in the absence of express agreement to the contrary. Defendant insists, however, that the buildings and improvements were a part of the realty incident to the leasehold, and, therefore, not personalty. But we do not so understand the case. The transaction was not a mere assignment of the lease, from which plaintiffs' acquisition of the improvements resulted as a collateral incident. The buildings were sev-

erable, not only in fact, but by express recognition in the instrument whereby the leasehold was created. It is immaterial that the tenant's right of removal at the end of the term was conditioned upon a fulfillment of the stipulations in the lease. There resulted no authority to assume that the condition would be broken. Until that event, as even the lessor himself could not claim a forfeiture of the right of severance, it remained as a positive right for all the purposes of sale or transfer. Such a right to remove the improvements, of whatsoever character, upon leasehold premises, has uniformly demanded their legal treatment as personal property of the lessees. *Hines* v. *Ament*, 43 Mo. 300 ; *Bircher* v. *Parker*, 43 Mo. 443. This personal property was distinctly sold to plaintiffs for the consideration of $2,000. The assignment of the lease, although contemplated in the same agreement, was yet as much a separate transaction as any form of English words could make it. It had no concern with the consideration of $3,500 for the engine, boiler, and buildings. It was to be made "free of charge," other than plaintiffs' undertaking to pay the rents and taxes, which undertaking was sufficient to justify the expression " for value received."

We conclude that every element which the law requires to constitute an implied warranty of title in the sale of chattels was present on this occasion, as affecting, not merely the engine and boiler, but the building also.

2. Did a breach of warranty arise upon sale of the same property under the deed of trust, and a voluntary surrender, in consequence, by the plaintiffs, of their possession? In cases of personal property the rule is well settled that the warrantee need not incur the expense of fruitless resistance against the paramount owner. But, in proceeding against the warrantor, he must show conclusively that the title to which he has surrendered was better than his own. The plaintiffs fully obeyed this requirement here.

3. What was the measure of plaintiffs' damages for the

breach of warranty, if any? As to the engine and boiler, it is substantially agreed that the court fixed this correctly at the sum which it cost the plaintiffs to get rid of the incumbrance, by purchasing again from the trustees. But, as to the buildings, defendant insists that plaintiffs could recover no more than they were worth as materials, upon removal. The rule is otherwise. While the vendor does not warrant against the loss of speculative profits, neither does he limit his warranty to any estimate which strangers might place upon the property for this or that purpose. He warrants that the vendee shall not lose the money actually invested. It follows that the measure of recovery, unless the intervening incumbrance be removed, is universally, as to either real or personal property, the amount of purchase money paid, with interest; to which may be added any expenses necessarily incurred in the defense of the failing title. The instructions given correctly applied the rule.

4. Upon the breach of warranty, if established, did a "debt," within the meaning of the statute, accrue against the corporation, which a stockholder might be held liable to pay? Section 22, on page 293, Wagner's Statutes, on which the plaintiffs rely, provides that, "if any company formed under this act dissolve, leaving debts unpaid, suits may be brought against any person or persons who were stockholders at the time of such dissolution, without joining the company in such suit." Defendant refers to the decision in *Cable* v. *McCune*, 26 Mo. 371, as showing that the liability here involved was not such a debt as the statute intends. In that case the statute required corporations to give notice annually of the amount of all their "existing debts;" failing which, the stockholders should be jointly and severally liable "for all the debts of the company," etc. The demand against the corporation was for damage sustained in the loss of a steamboat, through the negligence and misfeasance of its agents. The court held such a liability not to be a "debt" within the meaning of the law. That may

be good authority against an application of the word "debt" to liabilities "substantially founded on tort;" but it furnishes no aid against such an application to the demand here being considered, where tort is out of the question. Some diversity of interpretations has followed the use of the word in different statutes, much depending on the strict construction proper for a penal, or the more liberal one for a remedial, statute. The strict definition of the term, adopted from Blackstone, is: "A sum of money due by certain and express agreement." Yet the same author, in treating of the implied original contract to submit to the rules of the community whereof we are members, says that "whatever the laws order any one to pay, that becomes instantly a *debt* which he hath beforehand contracted to discharge." 3 Bl. Com. 158. This may serve to show that in the analytical mind of the great writer the force of the word "debt" was confined, not so much to express, in contradistinction to implied, contracts, as to liabilities arising purely out of contract, and unmixed with any considerations of tort or malfeasance. By some authorities it seems to be considered that any cause of action which may be assigned, or which will survive for or against the legal representatives after death, is properly called a debt, in whatever connection referred to. In popular use the term has a much larger import, comprehending dues and liabilities of infinite variety. Comparing together all the sources of light on this question, and giving to the statute a strict construction, which will exclude the broad, popular signification suggested, we find no difficulty in applying the word and the statute to the plaintiffs' ground of action here, as clearly within the meaning intended by the law.

But defendant here claims that this proceeding is also controlled by section 13, page 336, Wagner's Statutes, which declares that "no stockholder shall be personally liable for the payment of any debt contracted by any com-

pany formed under this chapter, which is not to be paid within one year from the time the debt is contracted, nor unless a suit for such debt shall be brought against such company within one year after the debt shall become due." It is ingeniously argued that, by operation of the first provision, the liability can attach with reference to those debts only which by their terms are *required* to be paid within one year from the date of contract. The deduction is illogical. We are really led by the provision to contemplate two classes of debts: one of which are " not to be paid" — *i. e.*, the collection whereof cannot be enforced—within one year; the other embracing such as are not so postponed, but *may* be coercively collected within that period. The statute of frauds (Wag. Stat. 656, sec. 5) employs a similar form of expression: " No action shall be brought * * * upon any agreement that is not to be performed within one year from the making thereof, unless the agreement," etc., shall be in writing, and signed, etc.

In *Foster* v. *McO'Blenis*, 18 Mo. 88, it was held that this statute does not apply to contracts which *may* be performed within a year. The ruling is sustained by numerous authorities, and has long been recognized as the settled law. According to the defendant's method of interpretation, a promise to pay the plaintiff so much money " on the day of his marriage," or " on the arrival of a ship," would be void unless in writing, because not required to be performed within a year. Yet these are cases employed to illustrate the contrary operation of the statute. By unquestionable analogy, the plaintiffs' claim for breach of warranty, which was capable of being enforced at any time, cannot be classed as a debt which was " not to be paid within one year" from the time it was contracted.

The last objection to be noticed is that no suit upon the debt in question was brought against the corporation within one year after it became due. This is effectually disposed of by the decision in *State Savings Association* v. *Kellogg,*

52 Mo. 583. It was there determined that the bankruptcy
of the corporation will dispense with the necessity for such
a suit, as a useless and frivolous measure which the law will
not require. *Lex neminem cogit ad vana seu inutilia.* In
the case before us the corporation was adjudicated a bank-
rupt some months before the breach of warranty occurred.

Finding no error in the record, we must affirm the judg-
ment. Judge BAKEWELL concurs ; Judge GANTT not sitting.