PROCTOR–GAMBLE CO. v. WARREN COTTON OIL CO. et al.

(Circuit Court, E. D. Arkansas, W. D.  May 13, 1910.)

No. 5,509.

1. COURTS (§ 366*)—FEDERAL COURTS—DECISION OF STATE COURTS—CONCLUSIVENESS.

The decision of the Arkansas Supreme Court that Kirby's Dig. §§ 848, 859, imposing a personal liability for corporate debts on the president and secretary of a corporation for failure to file annual reports of the corporation's condition, etc., was remedial and not penal, was conclusive on all federal courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–968; Dec. Dig. § 366.*

State laws as rules of decisions in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. CORPORATIONS (§ 340*)—"DEBTS"—LIABILITY OF OFFICERS—STATUTES.

Kirby's Dig. Ark. § 848, requires the president and secretary of every corporation to file annual reports, and section 859 provides that, if the president or secretary of any such corporation neglects or refuses to do so, they shall be liable for all debts of the corporation contracted during the period of such negligence or refusal. Held, that since the word "debt" means an obligation resting on one person to pay or perform something that is due to another, the state or condition of being indebted to another, and includes all that is due by one person to another in any form of obligation or promise, the term as used in such section was not limited to obligations certain, arising from an express agreement, but included

as well corporate obligations consisting of unliquidated damages for breach of contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1473–1478; Dec. Dig. § 340.*

For other definitions. see Words and Phrases, vol. 2, pp. 1864–1886; vol. 8, p. 7628.]

At Law. Action by the Proctor-Gamble Company against the Warren Cotton Oil Company and others. On motion of defendants J. M. Bailey and D. A. Bradham for a new trial, and judgment in their favor. Denied.

Plaintiff, a corporation created under the laws of the state of Ohio, seeks to recover from the defendant the Warren Cotton Oil Company, a corporation created under the laws of the state of Arkansas, and which will hereinafter be referred to as the "oil company," and the other defendants, J. M. Bailey and D. A. Bradham, who were, respectively, the president and secretary of the corporation, damages alleged to have been sustained by it by reason of a breach of a contract entered into between the plaintiff and the oil company for five tanks of cotton seed oil to be delivered at a future day. The testimony, which was undisputed, established the following facts:

On July 28, 1909, the defendant oil company, by its manager, entered into a written contract with the plaintiff, whereby it agreed to sell to the plaintiff, and the plaintiff to buy from it, five tanks of prime cotton seed oil at 31 cents per gallon f. o. b. Warren, Ark., where the oil company's mill was operated. Deliveries were to be made in October and the first part of November, 1909, to be paid for by plaintiff by sight draft drawn on it with bill of lading attached. Three tanks of the oil were duly delivered and paid for in October; but the other two tanks, which were to contain 7,000 gallons each, the oil company refused to deliver, whereupon plaintiff purchased the same in open market at 46 cents per gallon, the then prevailing market price, and instituted this action to recover the difference between the contract price and the price paid after the default.

The other defendants were, respectively, the president and secretary of the corporation at the time the contract was entered into, and have been such officers ever since, and they are sought to be held liable under the statutes of Arkansas digested in Kirby's Digest as sections 848 and 859. These sections are as follows:

"Section 848. The president and secretary of every corporation organized under the provisions of this act shall annually make a certificate showing the condition of the affairs of such corporation, as nearly as the same can be ascertained, on the first day of January or of July next preceding the time of making such certificate, in the following particulars, viz.: The amount of capital actually paid in; the cash value of its real estate; the cash value of its personal estate; the cash value of its credits; the amount of its debts; the name and number of shares of each stockholder; which certificate shall be deposited on or before the fifteenth day of February or of August with the county clerk of the county in which said corporation transacts its business, who shall record the same at length in a book to be kept by him for that purpose."

"Section 859. If the president or secretary of any such corporation shall neglect or refuse to comply with the provisions of section 848 and to perform the duties required of them respectively, the persons so neglecting or refusing shall jointly and severally be liable to an action founded on this statute, for all debts of such corporation contracted during the period of any such neglect or refusal."

No certificates required by section 848 were ever filed by these officers.

At the close of the evidence, plaintiff asked for a peremptory instruction against all the defendants, while on the part of defendants a peremptory instruction was asked in favor of the defendants Bailey and Bradham. The latter request was upon the ground that a liability incurred by reason of a

---

breach of a contract by a corporation is not a "debt" within the meaning of section 859. Neither counsel being then prepared to present the question involved by this motion as fully as its importance demanded, the court, not being sufficiently advised how to determine it, directed a verdict against all the defendants, reserving the points involved for final disposition on a motion for a new trial, and judgment in favor of these defendants notwithstanding the verdict of the jury.

J. W. & M. House, for plaintiff.
Davis & Pace and B. L. Herring, for defendants.

TRIEBER, District Judge (after stating the facts as above). The contention of counsel for defendants is that the word "debt" used in this statute must be given a strict construction and limited to "a sum of money due by certain and express agreement," and, as this is an action to recover unliquidated damages for a breach of contract under a statute penal in its nature and in derogation of the common law, it is not a "debt" within the meaning of the statute.

While there is an irreconcilable conflict among the authorities as to whether a statute of this nature is penal or remedial, and consequently whether it should be liberally or strictly construed, the Supreme Court of Arkansas, in Nebraska National Bank v. Walsh, 68 Ark. 433, 59 S. W. 952, 82 Am. St. Rep. 301, held this identical statute to be remedial and not penal. Counsel for defendants insist that that decision must be limited to the application of the statute of limitations and nothing else. But the opinion of the court does not sustain this contention. Mr. Justice Wood, who delivered the unanimous opinion of the court, after a very careful review of the many conflicting authorities cited by counsel, said:

"We conclude, from these considerations, that the statute is not penal, but highly remedial, even when construed independent of the statute of limitations."

And in another part of the opinion he said:

"With due deference to all authorities which hold that statutes similar to ours are penal, we are constrained to believe that such views are erroneous, and we fully agree with Mr. Morawetz that 'it is not quite clear what the courts mean to express by saying that statutes of this character are penal, and that they impose upon the directors a penal liability.' 2 Mor. Corp. § 908. The better view, as Judge Thompson says, is that expressed by the Supreme Court of Georgia, in the early case of Neal v. Moultrie, 12 Ga. 116. This opinion is unusually clear and strong."

This construction of the statute by the highest court of the state is conclusive, not only on this court, but all national courts, including the Supreme Court. Chase v. Curtis, 113 U. S. 452, 5 Sup. Ct. 554, 28 L. Ed. 1038; Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123; Continental National Bank v. Buford, 114 Fed. 290, 53 C. C. A. 14.

In determining the question involved, it is important to ascertain whether the word "debt" was used by the lawmaking body in that restricted sense as claimed by counsel for defendants, or in the broader sense, to cover all demands arising from contracts express or implied. In Am. & Eng. Enc. of Law (2d Ed.) 983, the general definition of the word is stated to be:

180 F.—35

"In common parlance the word 'debt' is sometimes used to denote any kind of a just demand, and has been differently defined owing to the subject-matter of the statutes in which it has been used; and while ordinarily it imports a sum of money arising upon a contract express or implied, in its most general sense it means that which one person is bound to pay or perform to another."

The notes cited by the author give the various definitions found in the law dictionaries, and need not be repeated here.

The Standard Dictionary gives as one of the definitions:

"The obligation resting upon one person to pay or perform something that is due to another; the state or condition of being indebted to another."

The courts which have defined the word "debt" have been influenced to a great extent by the context of the statute in which it was used, its objects, and the existing mischief sought to be remedied. A reference to these decisions, the language used in the statute under consideration, and the object sought to be attained by its enactment remove all doubt as to the construction to be placed upon this statute.

In Fisher v. Consequa, 2 Wash. C. C. 385, Fed. Cas. No. 4,816, Mr. Justice Washington, in speaking of an action for damages arising from a breach of contract said:

"The uncertainty of the sum does not, in the common understanding of mankind, render it less a debt. A promise, whether express or implied, to pay as much as certain goods or labor are worth, or as much as the same kind of goods may sell for on a certain day on a certain market, or to pay the difference between the value of one kind of goods and another, creates in common parlance a debt."

In New Jersey Insurance Co. v. Meeker, 37 N. J. Law, 282, 301, the court, in a very learned opinion delivered by Chief Justice Beasley, defined it as a word "of large import, including not only debts of record and judgment, and debts by specialty, but also obligations arising on an implied contract to a very wide extent, and in its popular sense includes all that is due to a man in any form of obligation or promise."

This definition was followed with approval by the Supreme Court of Massachusetts in Gray v. Bennett, 3 Metc. 522, 526.

In New Haven Steam Sawmill Co. v. Fowler, 28 Conn. 103, 108, it was held that damages due for a breach of contract was a debt within the attachment statute of that state. The same conclusion was reached in Stiff v. Fisher, 2 Tex. Civ. App. 346, 21 S. W. 291.

In Dunsmoor v. Furstenfeldt, 88 Cal. 522, 26 Pac. 518, 12 L. R. A. 508, 22 Am. St. Rep. 331, the court held:

"Any kind of obligation of one man to pay money to another is a debt."

And quoted with approval from Rodman v. Munson, 13 Barb. (N. Y.) 197:

"A debt signifies what one owes. There is always some obligation that it shall be paid; but the manner in which it is to be paid, or the means of coercing payment do not enter into the definition."

In Equitable Life Insurance Co. v. Board of Equalization, 74 Iowa, 178, 181, 37 N. W. 141, it was held that, under a statute au-

thorizing the deduction of "debts" from the credits list for taxes, the profits held for the stockholders are debts which should be deducted. Mr. Justice Beck, who delivered the opinion of the court, said:

"Here is a claim by the stockholders for which the corporation is liable. It is not now matured, but will become payable in the future. The amount which the stockholder will receive may not now be certainly determined. The corporation being bound to pay the stockholders its obligations, any credit creates a debt according to the definition above given."

In Cheney v. Straube, 35 Neb. 521, 53 N. W. 479, a liability arising from a breach of a covenant of warranty·was held to be a debt within the attachment statute, and in Dryden v. Kellogg, 2 Mo. App. 87, it was held that a liability upon a breach of warranty is a debt within the meaning of the statute similar to this providing for the liability of stockholders of corporations.

In Barber v. City of East Dallas, 83 Tex. 147, 18 S. W. 438, it was held:

"In common parlance the word 'debt' is sometimes used to denote any kind of just demand, and has been differently defined, owing to the subject-matter of the statute in which it has been used, and while ordinarily it imports a sum of money arising upon a contract express or implied, in the more general sense it means that which one person is bound to pay or perform for another."

In Green v. Easton, 74 Hun, 329, 26 N. Y. Supp. 553, officers of a corporation who had failed to comply with the requirements of the statute of that state were held liable for a debt arising from a breach of contract, although in that state it is the settled rule of law that such a statute is penal in its nature and must be strictly construed.

In Felker v. Standard Yarn Co., 148 Mass. 226, 19 N. E. 220, a tax assessed against the corporation was held to be a "debt" within the meaning of a statute making directors liable for the debts of the corporation.

Other cases in which the word "debt" was similarly defined are: Frazer v. Tunis, 1 Bin. (Pa.) 254; Mill Dam Foundery v. Hovey, 21 Pick. (Mass.) 417; Brand v. Godwin (Com. Pl.) 8 N. Y. Supp. 339, 9 N. Y. Supp. 743; Chalmers v. Sheehy, 132 Cal. 459, 64 Pac. 709, 84 Am. St. Rep. 62; In re Lambie's Estate, 94 Mich. 489, 54 N. W. 173; Rosenbaum v. U. S. Credit System Co., 61 N. J. Law, 543, 40 Atl. 591.

What the intention of the Legislature of Arkansas in the enactment of this section was is easily ascertained by an examination of the act of which these sections are a part. In the original act enacted in 1869 (Laws 1868–69, p. 186, § 21) the liability was only imposed when the officers named "intentionally" neglected to comply with the requirements of the statute. Gantt's Dig. § 3356. By the amendatory act of February 14, 1891 (Acts 1891, p. 12) the word "intentionally" was omitted, making the officers liable for neglect or refusal to comply with the provisions of this statute, regardless of the fact whether it was intentional or not. Section 859, Kirby's Dig.

It will be noted that in each of the acts the words used are "all debts," thus indicating that the intention of the lawmaking body was to include every liability arising upon contract. as distinguished from

those arising from torts. The object of the Legislature, no doubt, was to have publicity of the financial standing of the corporation and the names of its stockholders. The mischief then existing, and which it was sought to remedy, was that insolvent corporations would often hold themselves out to the world as being companies of large capital and means, and thus obtain extensive credits, when, in fact, they were wholly insolvent. By requiring these statements to be filed and recorded, and which by section 858, Kirby's Dig., are required to be made under oath, persons intending to deal with a corporation could examine these statements and decline to extend credit or enter into contracts with insolvent corporations from whom, in case of a breach, they could not recover what should be due them; stockholders of a corporation not being liable for the debts of the corporation under the laws of Arkansas. If no such statement had been filed, the financial responsibility of the president and secretary would determine the advisability of dealing with the corporation, for by their neglect to file this statement they, in effect, made "all debts" of the corporation their own and assumed liability for their payment. The Legislature certainly must have known what is known to every person, that the liabilities of corporations created by contracts to be performed in the future are as important and numerous and create as many liabilities as those created by loans of money or sales of merchandise; and, to remove all doubt on the subject, used the words "all debts" undoubtedly in the popular sense and common understanding of the people. To limit the meaning of the statute to the narrow technical meaning of "monies due by certain and express agreement" would not effect the purposes intended, and for the courts to give it that construction would defeat the evident purpose of the Legislature.

The object of these acts has been very aptly stated by the Supreme Court of the United States in Chase v. Curtis, 113 U. S. 452, 5 Sup. Ct. 554, 28 L. Ed. 1038. There it was sought to hold officers of a corporation liable under the statute of the state of New York, which is practically like that of the state of Arkansas, on a judgment rendered against the corporation for a tort committed by its agents; but the court held that such an action could not be maintained for a tort, even after it had been reduced to a judgment and thus liquidated and made certain, it was not within the contemplation of the lawmakers, as was apparent from the act. Mr. Justice Matthews, who delivered the opinion of the court, said on that point:

"Such claims are not within the contemplation of the act. The mischief to be prevented by its requirements has no relation to liabilities of that description. The creditors to be protected are those only who become such by voluntary transactions, in reference to which, for their benefit, the information becomes important as to the debts of the company." 113 U. S. 462, 5 Sup. Ct. 558, 28 L. Ed. 1038.

See, also, Beekman Lumber Co. v. Ahern, 75 Ark. 107, 111, 86 S. W. 842.

A party, whether a corporation or an individual entering into a contract to be performed in the future, impliedly promises to pay to the other party to the contract the loss sustained by him in case of a breach, and such a debt is clearly one arising from a contract. There

is an implied obligation to pay in a case of a breach of the contract the difference between the price contracted and the value of the article under contract of sale at the time of the breach, and this is as easily ascertained as the sum claimed in an action for a quantum meruit. As stated by Mr. Justice Washington in Fisher v. Consequa, supra:

"The uncertainty of the sum does not, in the common understanding of mankind, render it less a debt."

Whether it becomes a debt for which officers are under this statute liable when the contract is entered into or when there is a breach and the innocent party has either sold or purchased the articles contracted for, and thus made the amount of the debt certain, it is unnecessary to determine in this case, as the undisputed evidence is that these defendants were the officers of the oil company at both times and had failed to comply with the statute requiring the filing of a statement before the contract was entered into as well as when it was breached.

From a careful consideration of the authorities on the subject, the language of the act, the mischief then existing and sought to be remedied by the enactment of the statute, and in view of the construction placed upon this statute by the highest court of the state that it is remedial and must be liberally construed, it is impossible to escape the conclusion that by the use of the words "all debts" the legislative intent was to include liabilities arising from a breach of contract by a corporation as well as those due by certain and express agreement.

The motion for a new trial will be overruled, and judgment entered against all the defendants on the verdict of the jury.