SWIFT & CO. v. CONTINENTAL OIL & COTTON CO. (No. 7957.)

(Court of Civil Appeals of Texas. Ft. Worth. June 27, 1914. Rehearing Denied Oct. 17, 1914.)

SALES (§ 116*) — RESCISSION BY SELLER — BREACH OF CONTRACT BY BUYER.

The purchaser of 15 tank cars of butter oil to be so refined as to contain a certain percentage of red color, who had previously purchased other oil from the same seller, upon receiving a shipment under a previous contract, on January 9th wired the seller that the oil contained artificial coloring matter, that "absolutely cannot use butterine purposes," that if the seller would advise what was used it would try to make some use of the oil, but could not "handle further shipments other than absolutely pure cotton seed oil at any price." The seller thereupon wrote the buyer that it considered the contract broken and canceled, and then sold the oil to a third party, incurring expenses for broker's commissions, and in again refining the oil to meet the needs of such purchaser. On January 17th the buyer wired the seller that it would accept the oil, but in the meantime it had refused payment on a draft drawn for the price of the first car of oil under the contract for 15 cars, and there was other evidence showing that the telegram of January 9th referred to such contract. Held, that the telegram of January 9th justified the seller in treating the contract as broken by the buyer, as it was a clear and unequivocal statement, substantially, that the buyer would not receive further shipments of oil of the same color at any price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 290; Dec. Dig. § 116.*]

Appeal from District Court, Taylor County; Thomas L. Blanton, Judge.

Action by Swift & Co. against the Continental Oil & Cotton Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Kirby & Davidson, of Abilene, and Theodore Mack, of Ft. Worth, for appellant. S. P. Hardwicke, of Abilene, for appellee.

DUNKLIN, J. On December 5, 1906, the Continental Oil & Cotton Company, of Abilene, Tex., contracted to sell to Swift & Co., of Chicago, 15 tank cars of choice butter oil at 35 cents per gallon, to be paid for upon presentation of sight drafts drawn by the seller with bills of lading attached; the oil to be delivered 5 tanks in each of the months of January, February, and March, 1907, the buyer agreeing to furnish tank cars to receive the same at Abilene, and the terms of sale being f. o. b. at Abilene. The seller guaranteed weights and quality. The Continental Oil & Cotton Company was engaged in manufacturing and refining oil from cotton seed in the town of Abilene, and Swift & Co. were using such oil in the manufacture of butterine in Chicago, and the oil so contracted for was designed for such use. One of these cars was received by Swift & Co., as hereinafter shown, but the oil company refused to deliver the remaining 14 cars, and this suit was instituted by Swift & Co. against the oil company to recover damages for the failure to deliver those cars in accordance with the terms of the contract.

In addition to a general denial, the defendant pleaded specially that both before and after the date of said contract defendant requested plaintiff to so refine the oil to be delivered under said contract that it should be of a certain color and contain a certain per cent. of red; that in obedience to said request, and in compliance with the terms of said contract, defendant manufactured and prepared the full amount of oil called for in said contract, the same being prepared in exact accordance with the contract and said request; that thereafter, on or about January 9, 1907, and after plaintiff had received a car of oil of the same

kind, quality, and color, the plaintiff notified defendant that it would not receive any further shipments of oil of that character; that thereby plaintiff breached the contract in controversy, and, upon being notified of such refusal by the plaintiff, defendant at once notified plaintiff that, by reason of its refusal to receive oil such as had been prepared in accordance with plaintiff's request, plaintiff had canceled and rescinded the contract, and that defendant would so treat it. Defendant further alleged that, after such breach and abandonment of the contract by the plaintiff, defendant found another purchaser for the oil which it had so prepared in order to fill the contract in controversy, but in order to effect the sale to such purchaser it became necessary to again refine the oil to suit the wishes of such other purchaser; that it did so re-refine it at great expense, and that in order to sell the same defendant was compelled to pay a broker commissions in addition to the commission it had paid already to a broker for procuring the contract with the plaintiff in controversy; that by reason of such facts plaintiff is estopped from claiming the damages for which this suit was instituted.

Defendant further alleged that plaintiff further breached the contract in controversy by refusing to pay defendant's sight draft in accordance with the terms of the contract drawn upon the plaintiff for a tank of oil shipped to plaintiff by the defendant on January 9, 1907, under the contract in controversy.

The suit was tried before a jury, who, in obedience to a peremptory instruction from the court, returned a verdict in favor of the defendant. From the judgment entered in accordance with that verdict, the plaintiff has appealed.

Prior to the date of the contract in controversy, plaintiff had made purchases of choice butter oil from the defendant, the contract for one of which purchases was dated November 27, 1906, and was for four tank cars of choice butter oil at 34 cents per gallon; the other terms of the contract being the same as those of the contract in controversy. On November 28, 1906, plaintiff wrote to the defendant the following letter:

"Referring to our purchase yesterday through Claiborne, of Dallas, covering four tanks butter oil for December shipment, while some of the oil we have received from you on butter oil contracts this season has been very satisfactory in regard to flavor, it runs extremely light in color, and we write to ask if you can give us a higher colored oil on this contract. Oil as light in color as that you have been shipping us affects the quality of our goods considerably, and we would appreciate an expression from you as to whether you will be able to accommodate us on this point without affecting the quality of your oil in other respects."

To which letter the defendant replied on December 1st as follows:

"We have your valued favor of the 28th inst. which we thank you very much for; it is our earnest desire to give you as near the exact oil you want as possible, and we believe that if any one can, we can do so.

"We will to-day express you a half-gallon sample of what we would term a deeper colored oil, possibly more of a butter color than what we have been shipping you heretofore, and would kindly like for you to wire us, on receipt of sample, your opinion of same.

"Would suggest that you send us a half-gallon sample of some oil you have that shows exactly what you want, and possibly this way we can come nearer giving you the proper color; at least we will do our best to do so. Hoping that you will send us this sample of your own oil at once for our refiners guidance, we remain," etc.

On December 31st plaintiff again wrote to the defendant as follows:

"We had some correspondence some time ago in regard to your making for us a darker colored butter oil than that which you have been shipping us, and you stated that you would gladly try and comply with our request provided we would forward you a sample of oil which was satisfactory for our requirements as to color. We delayed answering this as we expected to have some oil in from which we could forward sample, but were disappointed in arrivals, and therefore have nothing which we can send you to convey our ideas of color. If you could give us an oil that will run just about standard, or 7.1 red in color, we would appreciate it very much, although we, of course, would not want you to sacrifice quality in other respects in doing so."

The evidence shows without controversy that, in compliance with plaintiff's request, as shown in the letters copied, the defendant manufactured and refined all the oil called for in the contract in controversy of the quality called for in the contract and of the color "7.1 red," as requested in the letter of December 31st. On or about January 9, 1907, plaintiff received a car of oil from the defendant, the car being No. 6009. On that date plaintiff wired to the defendant as follows:

"We find oil sixty naught nine contains artificial coloring matter. Absolutely cannot use butterine purposes. If will advise squarely what was used, will try to make some use of this oil but cannot handle further shipments other than absolutely pure cotton seed oil at any price. Answer."

Defendant replied to that telegram by letter dated January 10, 1907, reading as follows:

"Last night we were very much astonished when handed your telegram of January 9th, wherein you claim and state as a fact that you found oil in No. 6009 to contain artificial coloring matter, and that you cannot handle further shipments. We most absolutely and clearly deny that the oil shipped you contained artificial coloring matter of any kind. At your request, in refining the oil to fill your contracts, we refined it so that the color would comply with your request and suggestion. The color of the oil is occasioned by the manner of refining, and no outside or foreign ingredients were in any wise used to produce this color, but the color was produced by not extracting all of the color from the oil. As we refined this oil to suit your suggestions and request, and as you decline to receive same, we now notify you that we consider that you have breached the contract with us and we consider the contract canceled. The oil shipped you and which we have prepared for shipment to you contains

nothing but what naturally belongs to cotton seed oil, and the color you complain of does not evidence or indicate artificial coloring, but simply evidences, in fact, that the oil was refined so as to suit your suggestions as to color, and nothing more."

On January 11, 1907, plaintiff sent to defendant the following telegram:

"Occupant (meaning 'Please answer our telegram') ninth regarding quality oil in tank sixty naught nine."

And on the same date defendant replied thereto by wire as follows;

"Answered your telegram fully by letter tenth."

On January 17, 1907, plaintiff wired the defendant as follows:

"Letter received. We accept oil on contract. Will arrange forward tank cars for balance."

But prior to sending that telegram a car of oil shipped to plaintiff on January 9th under the contract in controversy had reached its destination, but the draft drawn by the defendant for the contract price therefor had been refused by the plaintiff and ordered returned to the defendant; and on the same date the telegram last quoted was sent, to wit, January 17, 1907, plaintiff wired the defendant:

"Return draft, will protect promptly."

That draft was intercepted in the mails by plaintiff and paid before it reached the defendant. On January 17, 1907, defendant wired the plaintiff as follows:

"Message received, our letter of 10th states our views clearly. We consider contract cancelled."

Numerous telegrams between the parties followed; those sent by plaintiff containing offers to accept the oil on the contract, insisting upon a delivery of the same, and in one of which it claimed, substantially, that the oil in car No. 6009 was shipped under the contract of November 27th, and that the telegram of January 9th had no reference to the contract in controversy; to all of which telegrams defendant replied, in substance, that it stood strictly on its letter of the 10th inst. and considered the contract canceled.

The evidence shows without controversy that the oil which was in car No. 6009, to which plaintiff's telegram of January 9th referred, was, substantially, of the color requested in plaintiff's letter to the defendant, and did not contain any artificial coloring, but was absolutely pure; that the color of the oil was produced by leaving a certain amount of red color in the oil instead of extracting it in the process of refining it, as was necessary to be done in order to produce a lighter color. The evidence further shows without controversy that all of the oil called for in the contract in controversy had been prepared by the defendant and was on hand on January 9th, and one car of the oil called for in the contract in controversy had been shipped to the plaintiff on that date; that it was of the same color, character, and quality as that contained in the car mentioned and to which the telegram of January 9th referred; that after the receipt by defendant of plaintiff's telegram of January 9th, and before defendant received any notice from the plaintiff that plaintiff would accept oil of that character and quality, the defendant contracted to sell it to another purchaser, to re-refine it at an additional expense for that purpose, and contracted to pay to a broker a commission for procuring that contract as it had done to procure the contract in question. The evidence further shows that on January 9th plaintiff had procured a chemical analysis of the oil in car No. 6009, but that the analysis did not disclose any artificial coloring matter in it.

Geo. B. Shuler, who was the buyer of cotton seed oil for plaintiff at the time, testified as follows:

"The oil was not suitable for butterine purposes. * * * The analysis did not show that there was artificial coloring matter in it, but it showed oil that we had never had anything to do with before, and we would not use it on the strength of that. We were willing to take it and use it for compound because the color made no difference."

According to the testimony of Shuler, the oil contained in car No. 6009 was shipped under the contract of November 27, 1906, and not under the contract in controversy.

Plaintiff's objection to the oil contained in the telegram of January 9th was the only objection ever made to the defendant as a reason for not accepting the oil.

The evidence shows without controversy that the letter written by plaintiff to defendant on December 31st requesting oil to be shipped thereafter should be a certain color —namely, 7.1 red—had reference to all oil to be thereafter shipped, including that embraced in the contract of December 5th. The price of oil advanced after December 5th, and during January, February, and March following was considerably higher than the price named in the contract in controversy. It further appears from the evidence beyond controversy that plaintiff's telegram of January 9th declining to receive any further shipments of oil of the kind and quality of that contained in car No. 6009 had reference to all oil to be thereafter delivered to plaintiff by the defendant, including that called for in the contract in controversy.

By different assignments of error appellant insists that the telegram of January 9th did not constitute such an abandonment of the contract as would authorize the defendant to elect to consider it at an end, and that, therefore, the court erred in the peremptory instruction given to the jury. The case of Kilgore v. N. W. T. Bap. Educational Association, 90 Tex. 139, 37 S. W. 598, is relied on by both parties to this appeal. In that case the following is said:

"The intention to abandon the contract at some future date is no breach of it, but, when that intention is declared in positive terms and unconditionally, it has the effect, in so far as the promisor is able to do so, to rerepudiate the

contract itself and to terminate the contractual relations between the parties. This affords to the other party the opportunity to accept the declarations, if he chooses to do so, and thus make effective the declarations of intention not to perform, rendering the contract thereby one that is broken on the part of the promisor himself. But, to have this effect, the declaration of an intention not to perform the contract in the future must be unconditional in its terms. Benjamin on Sales, § 568; U. S. v. Smoot, 15 Wall. 36 [21 L. Ed. 107]; Dingley v. Oler, 117 U. S. 490 [6 Sup. Ct. 850, 29 L. Ed. 984]. In his work on Sales, Mr. Benjamin, in the section cited above, says: 'But a mere assertion that the party will be unable or will refuse to perform his contract is not sufficient; it must be a distinct and unequivocal absolute refusal to perform the promise, and must be treated and acted upon as such by the party to whom the promise was made; for, if he afterwards continue to urge or demand compliance with the contract, it is plain that he does not understand it to be an end.' This language was approved by the Supreme Court of the United States in the case of U. S. v. Smoot, supra."

Tested by the rule thus announced, we are of the opinion that by plaintiff's telegram of January 9th it breached the contract, and, defendant having promptly so treated and acted upon it, plaintiff was not entitled to recover. By that telegram the only objection urged to the oil contained in car No. 6009 was that it contained artificial coloring matter, which objection, as noted already, was without any foundation in fact. The telegram was a clear and unequivocal statement, substantially, that plaintiff would not receive further shipments of oil of the same color at any price, and clearly, as shown by all the evidence, including plaintiff's refusal to honor the draft drawn by the defendant for the car of oil shipped on January 9th under the contract in controversy, had reference to the contract in controversy. Under such circumstances the defendant was fully authorized and justified in law to accept and treat the same as such a breach, and having done so without in any manner thereafter waiving its election to so treat it, the charge of the court directing the jury to return a verdict in favor of the defendant was proper.

Accordingly, the judgment is affirmed.

Affirmed.

SPEER, J., not sitting.