## MERCHANTS' COTTON OIL CO. v. ACME GIN CO. et al. (No. 120.)

(Court of Civil Appeals of Texas. Eastland. March 5, 1926.)

**I. Evidence ⚖➞113(2).**

If property has market value at place involved in inquiry, evidence to establish its price at the place is admissible.

**2. Evidence ⚖➞18.**

Court takes judicial notice that there is general market for cotton seed rather than one limited in time and place.

**3. Evidence ⚖➞113(2), 525 — In establishing market value of cotton seed at particular place and time, parties are not confined to sales at that place and time, but witnesses duly qualified may testify as to their opinion of its market value.**

In establishing the market value of cotton seed at a particular place and time, the parties are not confined to sales at that place and date, but witnesses shown qualified may testify as to their knowledge and opinion of its market value at that place and vicinity, as a commodity can have a market value without sales at the time.

**4. Words and phrases.**

"Market value" is sum for which equivalent could be reasonably and fairly purchased at or near where property should have been delivered.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Market Value.]

**5. Evidence ⚖➞213(1).**

Offer to pay sum in settlement of dispute is inadmissible in evidence.

**6. Evidence ⚖➞213(4) — Telegram reading, "Wire me your price in cancellation of contract," held inadmissible as independent admission of liability coupled with offer of compromise, as admission and offer therein cannot be separated.**

Telegram reading, "Wire me your price in cancellation of contract made with you yesterday," held inadmissible as independent admission of liability, coupled with an offer of compromise, as the admission and the offer cannot be separated to distinguish what was in the writer's mind.

**7. Appeal and error ⚖➞970(2) — Appellate court may not overrule trial court's discretion in excluding telegram because offer of compromise.**

Appellate court is not authorized to overrule trial court's decision in excluding telegram because offer of compromise, where trial court determined from surrounding facts and circumstances that the offer was an offer of compromise.

---

⚖➞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**8. Evidence ☞261—Where testimony raises issue of fact as to whether telegram constitutes offer of compromise, court may submit question to jury, with instruction to not consider telegram if intended as offer of compromise.**

Where the testimony raises an issue of fact as to whether the telegram constitutes an offer of compromise, court may submit question to jury under instruction not to consider telegram, if it was intended as an offer of compromise.

Appeal from District Court, Nolan County; W. P. Leslie, Judge.

Suit by the Merchants' Cotton Oil Company against R. E. Gracey and others, copartners doing business as the Acme Gin Company. Judgment was rendered for defendants, plaintiff's motion for a new trial was overruled, and plaintiff appeals. Reversed and remanded.

Beall, Beall & Beall, of Sweetwater, for appellant.

Ed J. Hamner, of Sweetwater, for appellees.

RIDGELL, J. The appellant filed its suit in the district court of Nolan county, against the Acme Gin Company, a partnership, alleging: That on the 9th day of October, 1923, appellant, through Martin & Price, brokers of Dallas, Tex., made a contract with appellees for the purchase of 650 tons of prime cotton seed, at the price of $42.75 per ton f. o. b. cars at Roscoe, Tex., delivery during the month of October, 1923. That appellees failed and refused to comply with the contract. That the market price of such seed at Roscoe, Tex., on the 31st day of October, 1923, and for several days prior and subsequent thereto, was $53 per ton, to appellant's damages in the sum of the difference between the contract price and the market value amounting to $6,662.50.

The appellees answered by general demurrer and general denial, and specially denied the contract as having been made, and any authority of any one to make the contract for appellees. The appellant filed supplemental petition, setting out the manner in which the contract was made, alleging that Martin & Price of Dallas, Tex., and W. H. Brooks of Abilene, Tex., acting with Martin & Price, and the appellees acting in said contract through R. E. Gracey, made the contract, and that the contract had been confirmed by appellant and accepted by appellees, and had never been revoked. The appellees filed first supplemental answer consisting of special exceptions and general denial. The cause was tried before a jury, and, upon motion of appellees, the jury were instructed to return a verdict for appellees. The judgment being rendered in favor of appellees, the appellant filed motion for new trial, which was over-ruled, and the cause is now properly before this court for review.

There are three issues involved in this appeal which we believe the record requires our consideration. The first proposition, and which is raised by several assignments of error, goes to the action of the court in excluding the testimony of R. M. Simmons, C. M. Francis, S. W. Browning, and G. O. Falitz.

The bill of exception shows that all of these witnesses were engaged in the buying and selling of cotton seed, all except the witness Falitz being so engaged in the immediate community and nearby cities.

The witnesses testified: There was a prevailing price for cotton seed delivered on the cars in this part of the country, including Nolan, Mitchell, Scurry, Howard, and other counties and communities in this vicinity in the latter part of October, 1923. That they did not know of a sale on October 31, 1923, at Roscoe, Tex., but that they were buying considerable cotton seed at the time, and that by reason of that fact were thoroughly acquainted with the prevailing prices of cotton seed in this part of the country, and that, from their knowledge of the conditions of the market, the reasonable market value of prime cotton seed, delivered free f. o. b. the cars at Rob, Loraine, Snyder, and Big Springs, and in this immediate part of the country at the time, ranged from $45 to $48 per ton. The witnesses testified they were acquainted with the market value of such seed in the surrounding territory, including town of Roscoe, during the month of October. The witness Browning testified that the seed was worth about $50 per ton f. o. b. Roscoe, on the 1st day of October.

Without repeating the testimony as shown by the various bills of exceptions of the several witnesses offered by appellant, it is sufficient to say that the testimony of all of said witnesses was substantially the same. The appellees objected to the testimony of said witnesses being admitted before the jury upon the grounds: First, because the witnesses based their opinions, not on sales of seed made at Roscoe, Tex., on October 31st, and because the witnesses should be confined to the price of cotton seed at Roscoe, Tex., on that date. In action of the court sustaining the objection to said testimony, error is assigned.

[1] It is generally correct, if property has a market value at the place involved in the inquiry, evidence is properly directed to establishing its price at the place.

[2-4] In this case it is true the market value of the cotton seed at Roscoe was the proper and legal inquiry, but, in establishing same, the parties would not be confined to sales at that place on that date alone, but viewing same from the general market, as we must know exists in the case of this great

staple, and from general and special knowledge of the market in that vicinity, and from knowledge of the market in Roscoe on and near the date contracted for delivery, certainly witnesses as in this case, shown from their relation to the business to be qualified, would be permitted to testify as to their knowledge and opinion of the market value of the cotton seed at Roscoe and vicinity. Humble Oil & Refining Co. v. Woods (Tex. Civ. App.) 277 S. W. 152.

By market value in the generally accepted term is meant the price or sum for which the equivalent could be reasonably and fairly purchased at or near the place where the property should have been delivered. Stiff et al. v. Fisher, 2 Tex. Civ. App. 346, 21 S. W. 291.

If the parties were confined to sales on that date alone as criterion for establishing market value, then, if same happened to fall on Sunday, or if no sales were made, according to said rule contended by appellees, they would be helpless to prove a market value. Sales do not prove market value to the exclusion of all other sources and means; they of course enter into the final making of market, and yet a commodity can have a market value without the existence of a sale at very time.

The testimony of all these witnesses on market value was admissible, and the objection urged would only go to the weight and not admissibility of same.

It is insisted by appellees that the contract declared upon by appellant was: That appellant purchased the 650 tons of seed through Martin & Price at $42.75 per ton f. o. b. Roscoe, Tex., delivery by October 31, 1923. That upon the proof of the contract alone could appellant recover. That the proof showed contract with W. H. Brooks. The appellant alleged that they bought the seed through their brokers, Martin & Price, and W. H. Brooks of Abilene, Tex. There was no variance in the pleadings stating a cause of action, and the cross-assignment will be overruled.

[5-7] Error is asserted in the action of the court in excluding from the jury, the following telegram:

"Roscoe, Texas, October 10, 1923. "Merchants Cotton Oil Co., Shreveport, La.— Wire me your price in cancellation of contract made with you yesterday.     R. E. Gracey."

As had been stated, Gracey was a member of the appellee firm, is a member of appellee firm and is the party charged by appellant to have made the contract alleged. The telegram was excluded by the court in the objection made that it was an offer of compromise. The correctness of the court's action under the authorities appears to depend upon whether, prior to sending the telegram, there was any dispute between the parties, and, if there was, the court's action was evidently correct under the rule announced in International & G. N. Ry. Co. v. R. S. Ragsdale, 67 Tex. 24, 2 S. W. 515. It was there held:

"If the object of the party in making the offer was to buy his peace (which is impliedly manifested by a mere proposition to pay a sum in settlement), it is deemed to have been made without prejudice and will be excluded."

See Tabet Bros. Co. v. Higginbotham (Tex. Civ. App.) 170 S. W. 118; Swift & Co. v. Continental Oil & Cotton Co. (Tex. Civ. App.) 170 S. W. 114; Lomax v. Trull (Tex. Civ. App.) 232 S. W. 861.

The court heard evidence upon the preliminary question as to dispute between the parties as to whether a contract had been made prior to the time the telegram was sent. Appellees' witness Gracey testified that there was; that the evening before the telegram was sent appellant's agent Brooks, the person whom appellant claims negotiated the contract for it, called said Gracey over the telephone with reference to the transaction, and that Gracey then denied that he had made the contract, but had only made a proposition subject to confirmation by certain other members of his firm, and that Brooks then claimed appellant was due him a commission, and, if he did not pay him, he would bring suit; that Gracey then called another member of his firm over the telephone and received information that the price of cotton seed was declining, and that appellant would probably be willing to drop the matter for a small consideration, and that, in response to this information, he sent the telegram in question. Appellant's witness Brooks admitted having such conversation with Gracey, but was uncertain as to the time, except that his recollection was to the effect that the telephone conversation occurred after the date of the telegram. St. Louis Southwestern Ry. Co. v. Kern (Tex. Civ. App.) 100 S. W. 971; Floresville Oil & Mfg. Co. v. Texas Refining Co., 55 Tex. Civ. App. 78, 118 S. W. 194.

Appellant seeks to invoke the rule than an independent admission of a liability is receivable in evidence, though coupled with an offer of compromise. This rule cannot be applied where the admission is so coupled with the offer that they cannot be separated so as to show distinctly what was in the writer's mind. Home Insurance Co. v. Baltimore Warehouse Co., 93 U. S. 527, 23 L. Ed. 868.

In determining whether the testimony is admissible, it is evident that something must be left to the discretion of the trial court, and where, as here, he has determined that from the surrounding facts and circumstances the offer was an offer of compromise, the appellate court is not authorized to overrule his discretion.

[8] In view of another trial of the case, it is suggested that the trial court, if the tes-

timony raises an issue of fact as to whether the telegram in question was sent under such circumstances as to constitute an offer of compromise, then it would b'e proper to submit that question to the jury and instruct them as to the rules of law if they found from the evidence the telegram in question was intended as an offer of compromise, and in that event that it should not be considered. Jones, Evidence (3d Ed.) § 291.

For the errors of the trial court in refusing to admit in evidence before the jury the testimony' of the several witnesses on market value of the cotton seed, it is ordered that the judgment of the trial court be reversed and remanded.