**COLE et ux. v. McNAY.**

No. 12338.

Court of Civil Appeals of Texas. Fort Worth.

May 31, 1930.

Rehearing Denied July 5, 1930.

Smith & Rowland and Hunter, Hunter & Greathouse, all of Fort Worth, for appellants.

Baskin, Eastus & Greines and Cantey, Hanger & McMahon, all of Fort Worth, for appellee.

BUCK, J.

In 1921, C. B. Cole and wife, Mrs. Eva Cole, lived on a section of land in Glasscock county, which had been purchased from the state, for young Cole by his father, W. R. Cole. About this time, young Cole, having had two or three crop failures, tried to sell the section and failed to do so. He then attempted to borrow some money on it. His father approached S. L. McNay, the latter residing in Fort Worth, Tarrant county, and being an old-time friend of some thirty years' duration, and made a request of him for a loan. McNay finally went to the home of W. R. Cole, in Parker county, and told him that he did not want to loan money on the place as it was a homestead of young Cole and his wife, but to write to Claude Cole that he would advance him $3,840 on the place and wanted him to have the land patented from the state, and that he (McNay) would hold the place and would let young Cole have the oil rights on the south part of the section, and when he sold it they would divide the proceeds equally, after 6 per cent. interest on the loan was paid, and any expenses that he might incur with reference to the land while he owned it. W. R. Cole testified that McNay did not say how long this arrangement would be for. Cole, through his daughter, Miss Pearl, wrote to his son, Claude Cole, of the offer made by McNay, and later Claude accepted it, and, under the direction of McNay, went to Big Spring, where Morrison & Morrison, attorneys, examined and approved the abstract of title. Cole and his wife executed to McNay a general warranty deed in form, but according to the testimony of Cole and his father, sister, and brother, and others, said deed conveyed the land in trust, and McNay obligated himself to carry out the terms of the said trust, and when he sold the land and after he had reimbursed himself for the principal, interest, and expenses incident to said trust, he was to divide what was left with Claude Cole, and Cole was also to have the gas and oil rentals and royalties on the south half of the section for five years.

Claude Cole lived on the place for something over a year after the deed was executed by him and his wife to McNay, and then they moved to Fort Worth for the purpose of educating their children.

Out of the $3,840 paid or advanced, according to whether appellants' testimony is to be believed or appellee's, 97½ cents an acre on the land was paid to the state, and a patent was issued. The deed was executed on November 22, 1921. During the latter part of the year 1921 and during 1922, while young Cole was living on the place in controversy, according to his testimony, he helped McNay paint the house, plant some sorghum seed, etc. Claude Cole moved to Fort Worth in December, 1922. In August, 1925, while Claude Cole and his father were in Fort Worth and at the stockyards, they saw McNay, and Claude told him that he had not sold the land, and that he (Claude) did not have anything with which to buy the crop in the field from his tenant, Sullivan, which matter had been discussed by McNay and Cole at a former meeting on McNay's ranch in Runnels county, and that he had decided to wait until Sullivan's time was out, and McNay said, "Well, I just decided that I will keep the place myself." Cole testified that McNay then turned around and walked off; that he seemed to be in a hurry; that this was the first time that McNay had said that he would keep the place.

In July, 1927, Claude Cole and his wife filed a suit against McNay, setting up the alleged contract between the Coles and McNay, by the terms of which McNay furnished

the $3,840, and Cole further alleged that McNay had repudiated the contract of trust, and prayed that the deed to McNay be canceled. In the second amended petition, filed June 1, 1929, Cole pleaded that he was ready and willing to do equity.

The court submitted to the jury two issues of fact, the first of which was answered "yes," and the second "no." The issues were as follows:

"Question One: Was it agreed between defendant, S. L. McNay on one side and plaintiffs, C. B. Cole and wife on the other side that McNay should advance to C. B. Cole the sum of $3840.00 and that Cole and wife should deed the land in controversy to Mc-Nay, reserving the mineral right in the south half for five years and that McNay should afterwards sell it, and should deduct from the proceeds of the sale of same the said sum of $3,840.00 and his expenses and interest on the money so advanced and divide the remainder of the proceeds of such sale equally between himself and C. B. Cole?

"Question Two: In the transaction between defendant, S. L. McNay and plaintiffs, C. B. Cole and wife regarding the land in controversy was it understood by the said McNay and C. B. Cole and wife that said McNay was purchasing said land and that said C. B. Cole and wife were parting with all rights of title which they had in same and that said McNay was acquiring same absolutely, subject to the reservation to Cole and wife of the mineral right in the south half for five years?"

Upon this verdict, the court rendered judgment that S. L. McNay was entitled to receive from the proceeds of said property the cash paid or advanced, to wit, the $3,840 with 6 per cent. interest thereon from November 22, 1921, with his expenses in the sum of $979.78, diminished by the excess of revenues received by defendant from said property over those received by plaintiffs from their oil and gas lease on a part thereof, which excess was $1,820.10. That said amount so to be received by defendant, S. L. McNay, from the proceeds of said property being $4,735.70, with 6 per cent. interest thereon from June 5, 1929, was awarded to McNay, and a lien was established on the whole of said property in favor of defendant McNay for the payment thereof, subject to the payment of which the said property so impressed with said trust was decreed to be owned beneficially one-half by plaintiffs, and one-half by defendant. The court further found that McNay should be removed as trustee and should be enjoined from selling the land and from collecting the mineral and other rentals therefrom or revenues thereof; and W. P. Edwards, a banker at Big Spring, was appointed as receiver of the court to immediately take possession, hold,

protect, and manage said real estate and property and to collect the rentals accruing from the oil and gas leases thereon, including all other rentals from the farm and pasture lands, with authority to sell and convey said land, and the title of all parties hereto, at private sale, subject to the approval of the court, said land to be sold for the purpose of paying said lien and claim of defendant McNay and of paying the remainder of the proceeds, one half to plaintiffs and the other half to defendant. Such receiver was required to report any and all contracts of sale to the court, and it was provided in the judgment that such contracts should not be binding until approved by the court. From this judgment the plaintiffs have prosecuted this appeal to this court.

### Opinion.

■■ It is urged by one of counsel for appellant, Judge Sam J. Hunter, that the court should have canceled the deed and placed the title to the land in Cole and his wife, and that McNay should not have received by the judgment any rights thereto. We do not agree with this view, inasmuch as the plaintiffs below pleaded, as they had to, that they were willing to do equity. The suit was an equitable proceeding, and it is the universal practice in equitable proceedings that the plaintiff should come into court with clean hands and offer to do equity.

■ Appellants' other attorneys, to wit, Messrs. Smith & Rowland, and McLeod Greathouse, Judge Hunter's partner, urge that the court should have awarded plaintiffs a decree canceling the deed theretofore made by them, awarding to them the title to the land, and divesting McNay of all interest in said title, except fixing a lien on said property for the payment of the indebtedness found to be owing to McNay under the trust agreement pleaded by plaintiffs and supported by the testimony of plaintiffs' witnesses.

We hold that the views urged by appellants' last-mentioned attorneys should be sustained. See Moore v. Middleton (Tex. Com. App.) 12 S.W.(2d) 995; Burks v. Neutzler (Tex. Com. App.) 2 S.W.(2d) 416; Western Oil Sales Corp. v. Bliss & Wetherbee, 299 S. W. 637, by the Commission of Appeals, approved by the Supreme Court; Roberts v. Fowler, 297 S. W. 339, by the Dallas Court of Civil Appeals; Stephenson v. Glass (Tex. Civ. App.) 276 S. W. 1110, approved by the Supreme Court in 115 Tex. 192, 279 S. W. 260.

In Moore v. Jenkins, 109 Tex. 461, 211 S. W. 975, 976, the Supreme Court said:

"The effect of an express and unconditional renunciation of his contract, by defendant in error, was to entitle plaintiffs in error to treat the contract as terminated if they so desired."

In Kilgore v. Northwest Texas Baptist Ass'n, 90 Tex. 142, 37 S. W. 598, 600, Judge Brown said:

"The intention to abandon the contract at some future date is no breach of it; but, when that intention is declared in positive terms and unconditionally, it has the effect, in so far as the promisor is able to do so, to repudiate the contract itself, and to terminate the contractual relations between the parties. This affords to the other party the opportunity to accept the declarations, if he chooses to do so, and thus make effective the declarations of intention not to perform, rendering the contract thereby one that is broken on the part of the promisor himself."

See Swift & Co. v. Continental Oil & Cotton Co., 170 S. W. 114, 117, by this court, writ of error refused, where the court, in an opinion by Justice Dunklin, said:

"We are of the opinion that by plaintiff's telegram of January 9th it breached the contract, and, defendant having promptly. so treated and acted upon it, plaintiff was not entitled to recover. By that telegram the only objection urged to the oil contained in car No. 6009 was that it contained artificial coloring matter, which objection, as noted already, was without any foundation in fact. The telegram was a clear and unequivocal statement, substantially, that plaintiff would not receive further shipments of oil of the same color at any price, and clearly, as shown by all the evidence, including plaintiff's refusal to honor the draft drawn by the defendant for the car of oil shipped on January 9th under the contract in controversy, had reference to the contract in controversy. Under such circumstances * * * to accept and treat the same as such a breach, and having done so without in any manner thereafter waiving its election to so treat it, the charge of the court directing the jury to return a verdict in favor of the defendant was proper."

We are of the opinion that the trial court's judgment should be reformed so as to cancel the deed from the Coles to McNay, and give to McNay a lien on all of the property to pay his debts, as fixed by the judgment below. That the judgment appointing a receiver should be reformed, so as to appoint W. P. Edwards as substitute trustee, and authorizing him to sell the land, or any part thereof, at least sufficient to pay the indebtedness to McNay, at private sale or public sale, to be approved by the court. As thus reformed the judgment will be affirmed. However, the plaintiffs are given ninety days after final judgment within which the amount fixed to be paid defendant may be paid before the trustee's power to sell may be exercised.

The costs of the trial court and of this court will be adjudged against the appellee.

### Appellants' Motion for Leave to File a Motion for Rehearing.

 Judge Sam J. Hunter, one of the attorneys of record for appellants, has filed his motion for leave to file a motion for rehearing. He asserts under oath that he suffered an accidental fall on the day the original opinion was handed down, in which two of his ribs were broken, and that he suffered because of such injury much physical and mental pain. That he was discharged by his physician on June 14, 1930; that he could not begin on his motion for rehearing before June 18th. The motion for leave to file was filed on June 20, 1930.

We think the motion to file sets up sufficient grounds to justify us in granting the motion to file, and we hereby grant the motion to file, and order the clerk to file appellants' motion for rehearing.

We have carefully considered the motion for rehearing and our opinion on original hearing, and we do not see any reason for disturbing our conclusions formerly reached. Moreover, appellants, Mr. and Mrs. C. B. Cole, have filed in this court a signed statement stating that they are satisfied with our opinion formerly rendered and do not wish any motion to be filed for rehearing.

Therefore, appellants' motion for rehearing is overruled.

Appellee has also filed a motion for rehearing, which we have carefully examined, but do not find any reason for disturbing our former opinion. Therefore, appellee's motion for rehearing is overruled.